IN THE SUPREME COURT OF MISSISSIPPI
NO. 97-CA-00177-SCT

*ROBBIE CARNATHAN*

*v.*

*CLAUDIA CARNATHAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/30/96 |
| TRIAL JUDGE: | HON. WOODROW WILSON BRAND, JR. |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ELIZABETH ANN BROWN |
| | RICHARD D. BOWEN |
| ATTORNEY FOR APPELLEE: | MICHAEL A. BOLAND |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 9/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/8/98 |

**BEFORE SULLIVAN, P.J., ROBERTS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

## SUMMARY

¶1. Robbie Carnathan has appealed from a decision of the Chancery Court of the Second Judicial District of Chickasaw County, Mississippi, granting Claudia Carnathan rehabilitative alimony of $2,000 per month.

¶2. The chancellor found that the parties had been married almost fourteen years with no children from the marriage, and that Claudia Carnathan was a high school graduate who had no skills other than limited clerical skills, and who was unemployed at the time of trial. Throughout the marriage, Claudia Carnathan deposited her check in the household account, though she never participated in the large family farming operation of which Robbie Carnathan was a one-third owner with his two brothers. The chancellor made a division of marital property which is not at issue here.

¶3. After careful review of the record and briefs in this matter, we find that the chancellor's findings of fact were supported by credible evidence and that the Chancellor was not manifestly wrong in ordering Robbie to pay rehabilitative alimony to Claudia in the amount of $2,000 per month for a period of twenty-four months. We, therefore, affirm the award of rehabilitative alimony.

## STATEMENT OF THE FACTS

¶4. Robbie Carnathan ("Robbie"), the Appellant, and Claudia Carnathan ("Claudia"), the Appellee, were married in December, 1980, in Chickasaw County, Mississippi. The parties separated on October 7, 1994, at which time Claudia left the marital domicile, taking with her only personal articles of clothing and the 1990 Cadillac which she was using at that time. Claudia filed for divorce on October 28, 1994, on the ground of irreconcilable differences. Both parties were 41 years old at the time of the trial and no issue existed as to children as none were produced by this marriage.

¶5. Robbie, who has been active in the farming operation since age 15, holds an equal one-third interest with his two brothers in the farming corporation known as Carnathan Farms, Inc. The farming operation involves approximately 5,000 acres, 1,400 is owned and the rest is leased, on which wheat, soy beans and 200 to 300 head of cattle are raised. The corporation had extensive equipment holdings, including three combines, three or four tractor trailers, six "regular type" tractors, bulldozers and a grader. Robbie could not tell how much the farm made last year because the CPA still had the paperwork. At the time of trial, the farming corporation owed one promissory note in the amount of $783,510.74, a second in the approximate amount of $135,000.00 for a combine purchased immediately prior to the trial, and a third for an estimated $22,000.00. Robbie testified that he was jointly and severally liable for the amounts owed on the promissory notes. No evidence was offered as to the value of Robbie's one-third stock ownership of Carnathan Farms, Inc., except his testimony that a one-third interest in the equipment was valued at $129,000. While Claudia had not participated in the farming operation known as Carnathan Farms, Inc., she had worked outside of the home as a secretary throughout the marriage and contributed her salary to the family income. The lower court held that the farming operation, as a separate legal entity, was the owner of its own assets.

¶6. The lower court also found that the parties were each entitled to an undivided one-half interest in the stipulated $31,000 of equity in the marital domicile. Robbie was awarded possession of the marital domicile and was ordered to pay Claudia $15,500.00 for her interest in the equity in the home. Robbie was also ordered to transfer to Claudia title to the 1990 Cadillac automobile which she was using at the time of the separation. All other personal property was divided in accordance with the specific requests of the parties. Robbie was further ordered to provide health insurance for Claudia for eighteen months and to pay rehabilitative alimony in the amount of $2,000.00 per month for a period of twenty-four months.

¶7. The findings of the chancellor and the agreed property division were incorporated into a "Judgment of Divorce- Irreconcilable Differences" on January 6, 1997. Robbie appeals the chancellor's awarding rehabilitative alimony to Claudia.

## DISCUSSION OF THE LAW

### I. THE LOWER COURT COMMITTED MANIFEST ERROR IN ITS AWARD OF REHABILITATIVE ALIMONY TO THE APPELLEE.

¶8. Robbie claims that the chancellor's findings of fact were not sufficient to support an award of rehabilitative alimony. In reviewing domestic relations matters, this Court will not disturb the factual

findings of a chancellor which are supported by credible evidence, unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994). On appeal

> [t]his Court is charged with reviewing the entire record. *Culbreath v. Johnson*, 427 So. 2d 705, 707 (Miss.1983); *Blakeney v. Blakeney*, 244 So. 2d 3 (Miss.1971). Evidence that supports or reasonably tends to support the findings of fact below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's finding of fact, must be accepted. *Blakeney*, 244 So. 2d at 4. As to issues of fact where no specific findings have been articulated by the chancellor, this Court proceeds upon the "assumption that the chancellor resolved all such fact issues in favor of the appellee." *Love v. Barnett*, 611 So. 2d 205, 207 (Miss.1992); *Tedford v. Dempsey*, 437 So. 2d 410, 417 (Miss.1983).

*Anderson v. Anderson*, 692 So. 2d 65, 71-72 (Miss. 1997).

¶9. This Court has held that in considering the reasonableness of an award for alimony, the following factors should be examined:

> i.The health of the husband and his earning capacity;
>
> ii.The health of the wife and her earning capacity;
>
> iii.The entire sources of income of both parties;
>
> iv.The reasonable needs of the wife;
>
> v.The reasonable needs of the children;
>
> vi.The necessary living expenses of the husband;
>
> vii.The estimated amount of income taxes the respective parties must pay on their incomes;
>
> viii.The fact that the wife has free use of the home, furnishings and automobile; and
>
> ix.Such other facts and circumstances bearing on the subject that might be shown by the evidence.

*Hemsley v. Hemsley*, 639 So. 2d 909, 912-13 (Miss. 1994). Although the lower court did not issue a specific finding as to Claudia's earnings history, a review of the entire record reveals evidence sufficient to raise a reasonable inference which, when taken as true, supports the finding that Claudia was entitled to an award of rehabilitative alimony. *Anderson v. Anderson*, 692 So. 2d 65, 71-72 (Miss. 1997).

¶10. The lower court found that Claudia was unemployed and had no skills of employment other than as a secretary. This left Claudia with no income with which to cover $2,061.00 in monthly expenses. At the time of trial, Claudia admitted her present health would not prevent her from returning to work, but she did not feel she could take a job until the chancellor resolved the issue of use and possession of the marital domicile. Claudia did not have the use of the 1990 Cadillac automobile, which she had used during the marriage, due to the fact that it was totaled in an April, 1995,

accident. She had insured the vehicle but could not settle the claim as Robbie refused to turn the title over to her. Nor did she have use of the marital domicile or other vehicles because these were awarded to Robbie.

¶11. Robbie, on the other hand, testified that he received a total monthly income from Carnathan Farms, Inc., in the amount of $4,000.00, this income to be applied against approximately $4,028.00 in monthly expenses, some of which were questionable. In fact, during questioning, Robbie admitted $475 could be deleted from his expense itemization. Robbie further testified that there was additional money in the corporation that he could draw on, although additional draws required the consent of his brothers. No proof was offered as to the total value of Robbie's interest in Carnathan Farms, Inc., nor was any proof addressed as to whether Robbie's interest in the farming operation grew, diminished or remained the same over the marriage, thus the chancellor refused to consider any claim by Claudia to an equitable interest in Robbie's one-third ownership in the family farm corporation. ***Ferguson v. Ferguson***, 639 So.2d 921, 929 (Miss.1994).

¶12. The lower court found that both parties had health problems. Robbie has a heart condition and has had three surgeries. The last open heart surgery was in May, 1995. At the time of trial, Robbie reported that he sees a doctor once every six months and has blood work done on a monthly basis. He describes his health as being fairly good since 1985, taking one pill a day as a blood thinner. Claudia has continuing health problems as a result of injuries sustained in an April, 1995, automobile accident. At the time of the trial Claudia was still under the care of a neurologist for the treatment of migraine headaches, but she testified that the headaches were no longer so frequent that they prevented her from working.

¶13. In ***Hemsley v. Hemsley***, 639 So. 2d at 913, this Court found that the chancellor did not abuse his discretion in ordering the husband to pay alimony in the amount of $1,400.00. The husband's monthly income was $4,000.00 and his expenses were $3,687.96 per month. ***Id.*** The wife's monthly salary of $1,540.00 and the alimony gave her a combined total income of $2,940.00 per month to be applied against $2,920.00 in monthly expenses. Similar to the case at bar, the award in ***Hemsley*** was supported by the fact that the wife had health problems and no skills other than clerical skills. Therefore, the chancellor's order that Robbie pay rehabilitative alimony to Claudia was supported by the credible evidence and was not manifestly wrong or clearly erroneous.

> II. THE LOWER COURT FAILED TO MAKE SUFFICIENT FINDINGS OF FACTS REGARDING APPELLEE AND THE CONTRIBUTIONS OF EACH PARTY IN THE ACQUISITION OF THE MARITAL ASSETS TO SUPPORT AN AWARD OF REHABILITATIVE ALIMONY TO THE APPELLEE AND ITS DIVISION OF MARITAL ASSETS.

¶14. Robbie contends that rehabilitative alimony to Claudia is improper in part because he believes the chancellor divided the marital assets on a fifty-fifty basis, and in light of this parity and the guidelines set out in ***Helmsley***, such an award of alimony is improper.

¶15. As to the farming operation which Robbie omits from his fifty-fifty analysis, the chancellor found that Claudia, while not directly participating in the operation of the farm,"...did work for the majority of the period of the marriage and the monthly income of each was deposited in a household account." The chancellor did not say Robbie's one-third equity interest in the family farm corporation was an

asset exempt from consideration in making an equitable distribution of marital assets. He correctly pointed out that Claudia advanced no proof of the value of stock whether by book or market and thus, by implication, he had no basis on which to make an award.Where one spouse has contributed directly to the acquisition of a marital asset by virtue of his/her labor, while the other has contributed indirectly by way of domestic services and/or earned income which both parties have enjoyed rather than invested, both spouses are entitled to an interest in the asset. *Ferguson v. Ferguson*, 639 So. 2d 921, 935 (Miss. 1994).

¶16. However, rehabilitative alimony is focused on providing interim assistance to allow a party a fresh start and not judicially redistribute assets. "`Rehabilitative periodic alimony' is not intended as an equalizer between the parties but is for the purpose of allowing the less able party to start anew without being destitute in the interim." *Hubbard v. Hubbard*, 656 So.2d 124, 130 (Miss. 1995). It should be remembered that Claudia not only must find new work, but must also establish a new domicile, as Robbie was awarded the use, possession and ownership of the house.

¶17. Based on the learned chancellor's bench opinion made at the conclusion of the trial, some additional comments may be appropriate on the issue of division of marital property. In his opinion, the chancellor stated:

> Although they say that Mississippi is not a community property state, interpretation of recent Supreme Court decisions leaves very little doubt. Simply stated, that which is accumulated during marriage, even though there may not have been a major contribution to those assets, the Supreme Court has held that being a housewife is sufficient to create that right. Like that old maxim that we had drilled in our heads going through basic officers infantry training, "It's not ours to reason why, but to do or die," and that is the posture in which the trial Court finds itself.

¶18. Without commenting on the correctness of the military principle enunciated, the chancellor mis-characterizes our laws with respect to the division of marital property. Mississippi is not a community property state.

¶19. "`Community property' is briefly defined as property owned in common by husband and wife." 41 C.J.S. *Husband and Wife* § 128 (1991). It is a complete system of marital property which governs spousal ownership of property during an intact marriage, upon divorce, and at death. Deborah H. Bell, *Equitable Distribution: Implementing the Marital Partnership Theory Through the Dual Classification System,* 67 Miss. L.J. 115, 20 - 21 (Fall, 1997)[1]. On the other hand, equitable distribution only applies at divorce. *Id.* at 122-24. Thus, under the community property system, Claudia would have a vested one-half interest in all the assets accumulated during the marriage even though the title to such assets was in Robbie's name. Conversely, equitable distribution would only give Claudia a property interest at the time of divorce. The community property system, in pure form, operates to give each spouse a one-half interest in all of the marital assets. Under equitable distribution, the goal is not to divide the marital property into equal shares, but to ensure that the final result is equitable to both parties.

¶20. Today, this Court reiterates that the trial courts are to utilize the Ferguson factors as the guidelines when determining what is an equitable distribution of the marital assets. *See Ferguson*, 639 So.2d at 928. Instead of looking to the bare title of a marital asset, this Court, as should the trial courts, will continue to consider all of the facts and circumstances surrounding the accumulation of

the marital assets, including noneconomic contributions and factors, when deciding how the marital property should be divided under our system of equitable distribution.

¶21. In fact, the chancellor in his bench opinion set out a good summary, although somewhat simplistically, of the categories of assets to be addressed in the dissolution of a marriage. "Marital assets fall into three major categories: assets of the plaintiff, assets of the defendant, and then accumulated marital assets." The later category are assets that can be considered for a division.

> Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage.

*Hemsley v. Hemsley,* 639 So.2d 909, 914 (Miss.1994).

## CONCLUSION

¶22. The lower court's findings regarding the factors to be considered in determining a reasonable award of alimony are supported by credible evidence; and, as such the lower court was not manifestly wrong in awarding rehabilitative alimony to Claudia. Whether Claudia adequately contributed to the martial assets is not one of the enumerated factors to consider in determining the reasonableness of an award of rehabilitative alimony; instead, it goes to the issue of the fairness of the equitable distribution of the marital property, which issue is not before this Court on appeal. The assignments of error are without merit, and the award of rehabilitative alimony is affirmed.[(2)]

**¶23. AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶24. This case is troubling. Claudia Carnathan never proved nor asked for rehabilitative alimony. Yet, she received $2,000.00 per month for **24 months** after she already wasted valuable job search time awaiting a disposition of this case by the chancellor! How could any chancellor justify granting **24 months** of rehabilitative alimony to someone who is only going to seek a secretarial position for which she already possesses the sufficient training? Such a decision makes a mockery of what is rehabilitative alimony. Nonetheless, the chancellor granted rehabilitative alimony, though the parties never requested it in their divorce consent agreement for issues to be tried by the chancellor and the appellee did not meet her burden of providing credible evidence. The majority affirms the chancellor by "reasonable inference" of the appellee's entitlement to such funds. Hence, the majority is of the belief that the chancellor did not manifestly err in providing rehabilitative alimony. For these reasons, I disagree.

¶25. The purpose of rehabilitative alimony is to allow "the less able party to start anew without being destitute in the interim." *See Hubbard v. Hubbard*, 656 So. 2d 124, 130 (Miss. 1995). In considering this purpose for the grant of rehabilitative alimony, the query must be whether

rehabilitative alimony is warranted. We may overrule a chancellor's decision only if we find the evidence lacked credibility or that the chancellor manifestly erred. *See Ferguson v. Ferguson,* 639 So. 2d 921, 930 (Miss. 1994). Indeed, we are to accept supportive evidence and reasonable inferences drawn therefrom favoring the finding below. *See Anderson v. Anderson*, 692 So. 2d 65, 72 (Miss. 1997). To determine whether the rehabilitative alimony is reasonable, we are required to utilize the factors elicited in *Hemsley v. Hemsley*, 639 So. 2d 909, 912-13 (Miss. 1994), which the majority so dutifully recites.

¶26. A threshold matter of concern is the majority's failure to consider that divorce is a creature of statute. *See Massingill v. Massingill*, 594 So. 2d 1173, 1175 (Miss. 1992). Under the mandates of Miss. Code Ann. § 93-5-2(3), parties consenting to an irreconcilable differences divorce permit the chancellor to decide the issues upon which they cannot agree. *See* § 93-5-2(3) (1994). The consent must be a signed writing and "must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment." *See id.* We have previously stated we strictly follow divorce statutes. *See Massingill*, 594 So. 2d at 1178.

¶27. In this case, the parties signed a typed consent agreement which the chancellor deemed to lack statutorily sufficient particularity. The chancellor subsequently allowed the parties to draft a particularized list of items at issue. The list was handwritten on a legal pad ten minutes before trial. While both parties signed the list, it lacked the requisite "voluntary consent" clause. Thus, the handwritten document too is insufficient. While one might argue that the handwritten document was incorporated in the originally submitted consent agreement, such an argument is without merit because justice requires an incorporated document to exist at the time of incorporation. Otherwise, one could change a document *ad infinitum* to the prejudice of the courts and the parties. Hence, the divorce, including all granted rehabilitative alimony, is facially invalid.

¶28. Given what the Court fails to sufficiently consider, the rehabilitative alimony granted is unreasonable under *Hemsley*. Both parties have health problems--so much so, that it is difficult to determine who is the "less able party" under *Hubbard*. Further, Claudia received her just portion of the marital property, including an automobile and equity in the domicile. Claudia argues that the alimony is reasonable as she has no income and still must pay expenses in excess of $2,000 per month. Yet, the evidence weighs heavily to providing no alimony as she admitted she could have worked throughout the duration of the litigation despite her injury. Instead, she chose to live a sedentary life until the chancellor disposed of the marital domicile. She was concerned about taking a job, then needing to switch after the chancery court's disposition of the house. Yet, such a decision is mutually exclusive from the key question of whether she could get a job or not without the need of rehabilitative funds for training. She argues all of this despite the fact that she was a secretary who switched jobs while she was married and still earned what the record states was a good salary. If she could immediately obtain a position that offers self-sufficiency, no rehabilitative alimony would be necessary. Therefore, sufficient evidence for reversal exists.[3]

¶29. The majority says it is making a reasonable inference. The majority is actually creating an incentive for Claudia to remain idle for 24 months. Indeed, the majority's "inference" seems more like unreasoned conclusive thought. More aptly, reversal is warranted. Accordingly, I dissent.

1. This article, utilizing the facts from *Ferguson*, provides an excellent analysis of how marital property is divided under each system.

2. The dissent urges that the divorce fails because of a facially invalid motion and consent, a point that was not raised by either party on appeal.

Prior to trial, the parties filed an agreed motion and consent for divorce on the grounds of irreconcilable differences with the chancery court. This consent, which was in writing and signed by the parties personally and their attorneys, permitted the chancellor to decide "the issues of the division of all marital property." Contrary to the dissent's assertion, the chancellor never found the motion to "lack statutorily sufficient particularity."

What the chancellor did say was that "in our district we require a little more specificity." He directed the lawyers to itemize the issues to be decided with respect to the division of marital property. This was accomplished in handwritten form on a legal pad and signed by the parties and their counsel. The chancellor then stated that the handwritten itemization would be included as an addendum to and made a part of the parties' consent motion. Whatever else the chancellor required of the parties, it is clear that he did not find the consent agreement insufficient to meet the statutory requirements of Miss. Code Ann. § 93-5-2 (1998). We agree. Thus, there was a valid divorce and the issues are properly before this Court.

3. The majority footnotes an attempted response to the dissent, but it palefully fails to address that she did not prove a need for rehabilitative alimony--or come anywhere close--.