Kathleen BYRNES, Appellant,

v.

William Thomas BYRNES, Appellee.

No. 2–99–061–CV.

Court of Appeals of Texas,
Fort Worth.

June 1, 2000.

Maria Moscariello Linden, Arlington, for Appellant.

Spencer, Green, Cox & Warren, R. Keith Spencer, Fort Worth, for Appellee.

PANEL B: DAY, LIVINGSTON, and RICHARDS, JJ.

## OPINION

SAM J. DAY, Justice.

In this appeal, Appellant Kathleen Byrnes challenges the trial court's refusal to enforce a document entitled "Agreement Incident to Divorce" signed by Kathleen and her ex-husband, Appellee William Thomas Byrnes.

We affirm.

## BACKGROUND

Kathleen and William Byrnes were married May 2, 1978. On October 31, 1997, William told Kathleen that he wanted a divorce and moved out of the couple's home. On November 2, 1997, Kathleen and William met at a restaurant, where Kathleen presented William with a document entitled "Agreement Incident to Divorce." Kathleen had drafted the document with the assistance of her attorney. William had not reviewed the document prior to the meeting and was not represented by counsel at that time. After reading the document, he signed it. The document was signed by two witnesses and notarized. The meeting lasted approximately 40 minutes to one hour.

On November 12, 1997, Kathleen filed a petition for divorce asking the trial court to enforce the parties' agreement, which she attached to her petition. William filed a general denial and formally repudiated the agreement, alleging it was not a just and right division of the parties' community property, it was unconscionable, it was procured by fraud and duress, it was not supported by consideration, and it was not voluntary.

On October 19, 1998, a bench trial was held solely on the issue of division of the parties' marital estate.[1] Kathleen argued that the trial court should uphold the parties' Agreement Incident to Divorce as a contract and incorporate the agreement into the final divorce decree. Alternatively, Kathleen argued it should be enforced as a partition agreement.

During the trial, the court ruled that the agreement was not enforceable as a mediated settlement agreement, but withheld its ruling as to whether the document was enforceable as an agreement incident to divorce or as a partition of the couple's community property. Without issuing a final ruling, the trial court asked both parties to submit a proposed division of their assets. Both parties did so and the trial court signed the proposal submitted by William.

On appeal, Kathleen raises sixteen issues challenging the trial court's failure to enforce the parties' agreement. Specifically, she argues that the trial court erred in failing to award William's interest in his military retirement to her as provided in the parties' agreement.

Section 7.006 of the family code provides that to promote the amicable settlement of disputes in divorce cases, spouses may enter written agreements concerning the division of their marital property, the liabilities of the spouses, and the mainte-

1. Kathleen's original petition also asked the trial court to enforce the provisions of the agreement that pertained to conservatorship and child support for the couple's three children. During the year before this case went to trial, the couple's oldest child became emancipated and one of the couple's two minor children went to live with William. The final divorce decree ordered that no child support be paid by either party.

nance of either spouse. TEX. FAM.CODE ANN. § 7.006(a) (Vernon 1998). The spouses' agreement may be revised or repudiated before rendition of the divorce unless the agreement is binding under another rule of law. *See id.* In this case, William repudiated the agreement immediately after Kathleen filed her divorce petition. However, Kathleen contends William's repudiation was ineffective because the agreement was binding "under another rule of law." *Id.* First, Kathleen argues that the agreement constituted a valid partition that vested William's interest in his military retirement in her at the moment the agreement was signed. Alternatively, Kathleen argues that the agreement, when signed, was a valid, enforceable contract that the trial court was required to accept. Finally, she argues the trial court should have approved of the document as an agreement incident to divorce that was not properly repudiated.

## WAS THE PARTIES' AGREEMENT A VALID PARTITION?

■ Section 4.102 of the family code provides that spouses may at any time partition between themselves any part of their existing community property. *Id.* § 4.102. The partition agreement must be in writing and signed by both parties. *See id.* § 4.104. The term "partition" as used in this section contemplates a division of property among the parties, not a complete forfeiture or assignment. *See McBride v. McBride,* 797 S.W.2d 689, 692 (Tex.App.—Houston [14ᵗʰ Dist.] 1990, writ denied). Absent a specific reference to a partition or language indicating that such a division was intended, Texas courts have refused to uphold transactions between spouses as partitions. *See Maples v. Nimitz,* 615 S.W.2d 690, 695 (Tex.1981); *Collins v. Collins,* 752 S.W.2d 636, 637 (Tex. App.—Fort Worth 1988, writ ref'd).

■ In this case, the specific provision that Kathleen argues constitutes a valid partition is entitled "PAYMENTS TO SPOUSE" and provides, "In order to fully discharge all obligations arising from the marriage, other than division of property, *Husband agrees to assign to Wife all total current and future financial benefits* that Husband is entitled to from retirement pay from the United States Air Force." [Emphasis added.] Nowhere in this paragraph or in the remainder of the couple's agreement is there any reference to a partition of interest. Indeed, the pertinent provision appears on its face to contemplate a complete forfeiture of William's interest. Because the parties' agreement makes no specific reference to a partition, contains no language indicating that the parties intended a partition, and provides for a forfeiture of William's interest, the document is not a valid partition under section 4.102 of the family code.[2] *See Maples,* 615 S.W.2d at 695; *Collins,* 752 S.W.2d at 637. Issue two is overruled.

## WAS THE PARTIES' AGREEMENT ENFORCEABLE AS A CONTRACT?

■ We turn next to Kathleen's contention that William's repudiation was ineffective because the agreement constituted a binding, enforceable contract at the moment it was signed. First, Kathleen argues that "[a]greements incident to divorce are contracts and may be enforced as such," citing *Traylor v. Traylor,* 789 S.W.2d 701 (Tex.App.—Texarkana 1990, no writ.). However, *Traylor* actually held that, "Agreements incident to divorce *which are incorporated into a final divorce decree* are correctly considered as contracts." *Id.* at 703 (emphasis added). *Traylor* involved the enforcement of an agreement that had been incorporated into the parties' final divorce decree without

2. The parties' agreement also specifically provides that it is subject to judicial approval. A partition agreement does not require judicial approval, while an agreement incident to divorce does. *See* TEX. FAM.CODE ANN. § 7.006; *Patino v. Patino,* 687 S.W.2d 799, 801 (Tex. App.—San Antonio 1985, no writ).

contest and thus does not support Kathleen's contention. *Id.* at 702.

Next, Kathleen points us to language in the couple's agreement stating that it is binding on the parties' heirs and assigns as evidence that the parties intended for the agreement to take immediate effect. She also directs us to language in the final paragraph of the agreement, which provides that it is immediately enforceable. However, the "immediately enforceable" language appears to refer only to the parties' agreement for temporary support. Moreover, Kathleen overlooks the unambiguous language in paragraph VIII, entitled *"Approval by Court."* This paragraph provides, "This agreement will be submitted to the court for approval. This agreement is made in accordance with [section 7.006] of the Texas Family Code."[3]

■ Nothing in the parties' agreement indicates that the parties intended to effect an immediate transfer of interest upon the signing of this agreement, or that the parties intended this document to constitute a binding contract. Rather, it is evident from the agreement's unambiguous language and the parties' specific reference to the provision in the family code governing agreements incident to divorce that the parties contemplated their agreement would not be binding unless approved by the court. TEX. FAM.CODE ANN. § 7.006(b), (c); *Myers v. Myers,* 503 S.W.2d 404, 405 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ) (holding that an agreement between parties that was conditioned on trial court's approval was not binding at the time it was signed). Because Kathleen has not established that the document was "binding under another rule of law," the

trial court did not err in impliedly finding that William's repudiation before rendition of the parties' divorce was valid. *See* TEX. FAM.CODE ANN. § 7.006(a). Issues three and four are overruled.

## DID THE TRIAL COURT'S DECREE DIVEST KATHLEEN OF HER SEPARATE PROPERTY?

In issues one and five, Kathleen argues that the trial court erred in divesting her of separate property acquired by the parties' agreement to convert William's interest in his military retirement to Kathleen's separate property. Kathleen also argues that the trial court should have enforced the agreement regardless of the title on the document.

■ In Texas, all property possessed by either spouse during a marriage is presumed to be community property. *See id.* § 3.003(a) (Vernon 1998). As noted in points two through four, Kathleen failed to establish that the document signed by the parties was a binding agreement, either as a valid partition or as an enforceable contract, that divested William of his community property interest. Because Kathleen failed to overcome the community property presumption, the trial court did not abuse its discretion in including William's military retirement benefit in the court's division of the couple's community property estate. Issues one and five are overruled.

## THE TRIAL COURT'S FAILURE TO DIVIDE THE PARTIES' DEBTS

■ In issues six and seven, Kathleen contends the trial court erred in failing to

---

**3.** Section 7.006 (formerly section 3.631) provides in relevant part:

(b) If the court finds that the terms of the written agreement in a divorce or annulment are just and right, those terms are binding on the court. If the court approves the agreement, the court may set forth the agreement in full or incorporate the agreement by reference in the final decree.

(c) If the court finds that the terms of the written agreement in a divorce or annul-

ment are not just and right, the court may request the spouses to submit a revised agreement or may set the case for a contested hearing.

TEX. FAM.CODE ANN. § 7.006(b), (c). Thus, the parties' agreement cannot be included in the trial court's final decree of divorce or incorporated by reference unless the court approves the agreement as being just and right. *See id.*

divide the parties' entire community estate, including the parties' debts. However, Kathleen did not raise this complaint to the trial court.[4] Because the trial court was not given an opportunity to correct this alleged error, Kathleen has waived the right to complain about this issue on appeal. *See* Tex.R.App. P. 33.1(a). Issues six and seven are overruled.

## THE TRIAL COURT'S IMPLIED FINDINGS

In issue eight, Kathleen alleges the trial court erred in impliedly finding the parties' agreement to be unconscionable as a matter of law. In issues nine through sixteen, Kathleen challenges the legal and factual sufficiency of the evidence to support the trial court's implied findings that the agreement between the parties was procured by fraud or duress, that it was not voluntarily entered, and that it was not supported by consideration.

 After the trial court entered its order, Kathleen requested findings of fact and conclusions of law. Although the trial court failed to file findings and conclusions, Kathleen did not file a notice of past due findings as required by Rule 297 of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 297. Where no findings of fact or conclusions of law are filed, the trial court's judgment implies all necessary findings of fact in support of it. *See Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex.1996). Where the implied findings of fact are supported by the evidence, it is our duty to uphold the judgment on any theory of law that finds support in the evidence. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987). This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *See Harrington v. Railroad Comm'n*, 375 S.W.2d 892, 895 (Tex.1964); *Dale v. Finance Am. Corp.*, 929 S.W.2d 495, 497–98 (Tex.App.—Fort Worth 1996, writ denied).

As noted above, William repudiated the parties' agreement on each of the grounds now challenged by Kathleen. He also repudiated the agreement on the ground that it was not a just and right division of the couple's community property estate, a ground that Kathleen does not challenge.[5] After reviewing the record, we hold that the evidence was sufficient for the trial court to conclude that the couple's agreement incident to divorce did not reflect a just and right division of the couple's community property.[6] Because the evidence was sufficient to support the trial court's implied finding that the Agreement Incident to Divorce was not just and right, and because Kathleen has not challenged this finding, we must uphold the trial court's order. Accordingly, issues eight through sixteen are overruled.

## CONCLUSION

Having overruled Kathleen's issues on appeal, we affirm the trial court's order.

---

4. Kathleen contends she filed an amended motion for new trial "specifically requesting the trial court modify or set aside the judgment entered on January 19, 1999." Although Kathleen did file an amended motion for new trial, nowhere did she make the trial court aware of its failure to divide all of the parties' debts.

5. We note that the trial court has wide discretion in making a just and right division of a divorcing couple's community property estate, which may not be set aside on appeal absent an abuse of discretion. *See Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex.1981).

6. Among other things, the record reflects that the parties have approximately equal earning potential, William agreed to give Kathleen the couple's home and most of the personal effects acquired during their marriage, William assumed all credit card debt owed by the couple, and Kathleen received approximately $15,000 from William in child support payments and temporary spousal support payments in the year preceding the divorce. The trial court was entitled to consider all of these factors in making its division of the couple's community property estate. *See Murff*, 615 S.W.2d at 698–99.