# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20050

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

>        Plaintiff - Appellee

v.

GWENDOLYN BERRY, also known as Gwen Berry,

>        Defendant - Appellant

MICHAEL BERRY,

>        Appellant

Appeals from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, JONES, and DUNCAN, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Michael and Gwendolyn Berry appeal a final order of garnishment under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3613, and 28 U.S.C. § 3205, contending that investment retirement accounts in Michael's name are not yet subject to restitution for Gwendolyn's crime victims and, alternatively, that no more than a quarter such funds can be garnished. We conclude that half the funds—around $1 million—may be garnished now and AFFIRM.

No. 19-20050

## BACKGROUND

Gwendolyn Berry pled guilty and was convicted of wire fraud, mail fraud, and falsifying a tax return, all in connection with the ongoing theft of funds from her employers. As part of her sentence, she was ordered to pay restitution of more than $2 million.

To enforce the judgment, the government applied under 18 U.S.C. § 3613 and 28 U.S.C. § 3205 for a writ of garnishment directed to "Vanguard Marketing Corp. and/or The Vanguard Group" ("Vanguard"). The government sought to garnish five investment retirement accounts ("IRAs") held under Gwendolyn's or her husband's name. After Gwendolyn agreed to release the funds in the accounts in her name, the government reapplied to garnish Vanguard for 50% of the funds in two accounts in Michael's name. The district court granted the writ.

Michael and Gwendolyn each objected and moved to quash. After a hearing, the district court denied those motions and denied the Berrys' motion to reconsider. In January 2019, the district court issued a final order of garnishment requiring Vanguard to liquidate certain accounts held in Michael's name and pay half of their holdings, approximately $1 million, to the government. Michael and Gwendolyn each timely appealed and sought a stay of enforcement of garnishment pending appeal. The district court granted the motion to stay. This court separated this case from Gwendolyn's appeal of her criminal conviction.[1]

---

[1] The conviction was upheld. *United States v. Berry*, No. 18-20617, 2019 WL 5866610 (5th Cir. Nov. 8, 2019).

No. 19-20050

## STANDARD OF REVIEW

This court "review[s] garnishment orders for abuse of discretion." *United States v. Tilford*, 810 F.3d 370, 371 (5th Cir. 2016). We review "interpretation[s] of relevant statutory provisions . . . *de novo.*" *Id.*

## DISCUSSION

In MVRA, federal law provides for restitution to victims of federal crimes and affixes a lien on a defendant's property and rights to property to secure such restitution. Thus, 18 U.S.C. § 3613(a) states:

> The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law. . . , a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that—
>
> . . .
>
> (3) the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law.

Federal law creates the lien, but state law defines the property interests to which the lien attaches. *United States v. Elashi*, 789 F.3d 547, 548–49 (5th Cir. 2015) (citing *United States v. Rodgers,* 461 U.S. 677, 683, 103 S. Ct. 2132, 2137 (1983)).

The Berrys raise arguments grounded in both federal and state law to urge that Michael's IRAs are not part of "all property or rights to property of the person fined."[2] As a fallback, they maintain that, if Michael's IRAs are part of Gwendolyn's "property or rights to property," the provisions of § 303 of

---

[2] Michael and Gwendolyn incorporate each other's separate briefs, except that Gwendolyn does not incorporate Michael's supplemental brief.

No. 19-20050

the Consumer Credit Protection Act cap how much the government may garnish from them.[3] We take these arguments in turn.

## I. Federal Law

Relying on the federal tax code's treatment of IRAs, the Berrys first deny that any non-defendant spouse's IRA can be part of a defendant spouse's "property or rights to property" under 18 U.S.C. § 3613. Binding precedent is against them.

In *United States v. Loftis*, 607 F.3d 173 (5th Cir. 2010), this court stated:

> The Mandatory Victims Restitution Act makes a restitution order enforceable to the same extent as a tax lien. 18 U.S.C. § 3613(c). Consequently, the district court also correctly held that the government could garnish Todd's [the defendant's] one-half interest in any community property solely managed by Lisa, including her retirement savings account. *Id.* at 179 n.7 (citation omitted).

Based in part on this analysis, the court affirmed the restitution order of the district court. *Id.* at 179–80. That is, the *Loftis* court affirmed a restitution order garnishing an IRA solely managed by a non-defendant spouse. *See United States v. Loftis*, No. 3:06-CV-1633-P, 2007 WL 9711722, at *4 n.3 (N.D. Tex. Sept. 28, 2007).

Failing to mention *Loftis* until a footnote in Michael's reply brief, the Berrys contend both that Michael's IRA is a species of federal property that preempts Gwendolyn's state law community property rights and that an anti-alienation provision for IRAs also prevents Gwendolyn from gaining access to Michael's IRAs. Either way, they contend, Gwendolyn has no present rights

---

[3] They also contend that the writ of garnishment is facially defective for various reasons, but acknowledge this set of arguments repeats arguments raised in Gwendolyn's conviction appeal. In her appeal, this court rejected the same arguments. *Berry,* 2019 WL 5866610, at *10. We and the Berrys are bound by that decision.

in Michael's IRAs, and his accounts are not (yet) subject to § 3613-based garnishment for her crimes.

Both interpretations, however, fail to take account of the "notwithstanding" clause of § 3613(a) and conflicting authority. The Berrys cite no law exempting 26 U.S.C. § 408, which governs IRAs, from being an "other Federal law" expressly subject to the MVRA regime. The Berrys analogize to ERISA law, represented by their reliance on *Boggs v. Boggs,* 520 U.S. 833, 117 S. Ct. 1754 (1997), but ERISA has no direct application to IRAs. In any event, this court has held that notwithstanding its anti-alienation provision, 29 U.S.C. § 1056(d)(1), ERISA retirement accounts are subject to MVRA restitution awards. *United States v. DeCay,* 620 F.3d 534, 541 (5th Cir. 2010).

Equally fatal to the Berrys' interpretation of Michael's IRAs is that it contradicts the interpretation adopted in *Loftis*, and "a later panel of this court cannot overrule an earlier panel decision." *Hill v. Carroll County*, 587 F.3d 230, 237 (5th Cir. 2009). Michael counters that "[t]his Court's opinion in *Loftis* did not address the issues now presented for review." Under our rule of orderliness, though, an earlier panel decision binds even if that panel's opinion does not explicitly address arguments presented to the later panel. *See Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 403 (5th Cir. 2018). Accordingly, pursuant to *Loftis,* Gwendolyn's one-half interest in Michael's solely managed IRA is part of "all property and rights to property of the [spouse] fined" under § 3613.[4]

---

[4] This holding does not conflict with *United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007), on which the Berrys rely.

The *Novak* court asked, "When is a participant's interest in a retirement plan 'property or [a] right[ ] to property' under 18 U.S.C. § 3613(a)?" *Id.* at 1060. To answer this question, the court "look[ed] to ERISA" alone because "the species of property rights" at issue was "[r]etirement plans covered by ERISA" and because such plans are "governed exclusively

No. 19-20050

## II. State Law

Turning to state law, the Berrys deny that Michael's IRAs are "solely managed" community property. Instead, they contend that the IRAs are Michael's separate property and, as such, not part of Gwendolyn's "property or rights to property" subject to garnishment under § 3613. We disagree.

The Berrys initially quibble[5] about which state law applies. They propose Pennsylvania law because Michael's agreement with Vanguard includes a choice-of-law provision designating Pennsylvania law. The Berrys waive their proposal, though, by citing no authority to show that a custodial agreement determines what law governs the marital property rights of a non-party to that agreement. *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) (an argument lacking authority is "abandoned for being inadequately briefed"). In general, the law of the debtor's domicile state defines the property interests to which a judgment lien may attach. *Compare Elashi*, 789 at 548–49, *with Rodgers*, 461 U.S. at 683, 103 S. Ct. at 2137, *and United States v. Mitchell*, 403 U.S. 190, 190, 91 S. Ct. 1763, 1765 (1971). Thus, the relevant law is that of Gwendolyn's domicile state, Texas.

---

by federal law[, *s*]*ee* 29 U.S.C. § 1144(a) (dictating that, with certain exceptions, ERISA 'shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan')." *Id.* at 1061.

Not only is this case not an ERISA case; it also involves no preemption clause comparable to 29 U.S.C. § 1144(a). The closest analogue, 26 U.S.C. § 408(g), governs only how "[t]his section"—not "any and all State laws insofar as . . . they relate to any . . . benefit plan"—"shall be applied." The IRA preemption provision is plainly narrow and in no way applicable here.

On both these grounds, *Novak* is distinguishable from this case, and the two decisions cannot conflict. *Cf. Tilford*, 810 F.3d at 371, 373 (affirming denial of non-defendant spouse's motion to quash garnishment of her employer's contributions to her 401(k) retirement plan(s)).

[5] The Berrys identify no difference between Pennsylvania and Texas law relevant to this case.

No. 19-20050

In Texas, the "separate property" of one spouse is not the community property of both spouses, TEX. FAM. CODE ANN. § 3.002 (West), and spouses may designate "separate property" by written agreement, signed by both parties, *id.* §§ 4.102, 4.104. In 2006, when Michael rolled over his ERISA account into an IRA, Gwendolyn signed the rollover document, acknowledging that she thereby waived her right to survivorship that federal law guaranteed her on the ERISA account. The Berrys contend that this document, signed by both spouses, constitutes a valid agreement to make the resulting IRAs Michael's separate property.[6]

Texas law runs contrary, however. "Absent a specific reference to a partition or language indicating that such a division was intended, Texas courts have refused to uphold transactions between spouses as partitions." *Byrnes v. Byrnes*, 19 S.W.3d 556, 559 (Tex. App. 2000); *accord McPhee v. I.R.S.*, No. CIV.A. 300CV2028D, 2002 WL 31045978, at *2 (N.D. Tex. Sept. 10, 2002). Further, "[t]he term 'partition' as used in [§ 4.102] contemplates a division of property among the parties, not a complete forfeiture or assignment." *Byrnes*, 19 S.W.3d at 559. Gwendolyn's waiver of a right to survivorship, however, included no specific reference to partition or language indicating such a division, and at the same time, her waiver of a right to survivorship was entire. The waiver was not a partition.

More broadly, "[p]roperty possessed by either spouse during . . . marriage is presumed to be community property," TEX. FAM. CODE ANN. § 3.003 (West), and indeed, "[r]etirement benefits accrued during a marriage are

---

[6] The Berrys also maintain that the right to partition property is a state constitutional right, and thus that garnishment of Michael's IRAs would "constitute[] not only an unlawful taking under the Federal constitution but under the Texas Constitution as well." This point depends entirely on the Berrys' unsubstantiated allegation that they established in writing that Michael's IRA funds are his separate property. Otherwise undeveloped, the argument fails.

7

presumptively community property." *Howard v. Howard*, 490 S.W.3d 179, 184 (Tex. App. 2016). "The degree of proof necessary to establish that property is separate property is clear and convincing evidence." TEX. FAM. CODE ANN. § 3.003 (West). A waiver of an ERISA right to survivorship (in the same document that one is named beneficiary of the rollover IRA, as Gwendolyn was here) is not clear and convincing evidence to overcome the presumption that Michael's IRAs are community property.

To be sure, Michael's IRAs are *solely managed* community property, and a wife has only a one-half interest in her husband's solely managed community property, *Elashi*, 789 F.3d at 549. Gwendolyn, therefore, has only a one-half interest in Michael's IRAs, but the government concedes as much. It requested, and the district court granted, garnishment in accord with this limitation.

## III. Consumer Credit Protection Act

The Berrys' final argument relies on the garnishment cap in § 303 of the Consumer Credit Protection Act ("CCPA"), which limits restitution under 18 U.S.C. § 3613(a)(3). The CCPA sets maximum garnishment at 25% of "earnings for that week," 15 U.S.C. § 1673, and the statutory definition of "earnings" includes "periodic payments pursuant to a pension or retirement program," 15 U.S.C. § 1672(a).

The Berrys contend that, if the government were to liquidate Michael's IRA funds, then the lump sum resulting from that liquidation would be "earnings." They posit that "[e]arnings are defined as payment through personal services or retirement benefits," and they note that the definition of "earnings" in § 1672 does not explicitly exclude lump-sum payouts of retirement benefits. The Berrys aver further that excluding Michael's IRAs, which have no periodic payment requirement (other than to preserve tax benefits) would be absurd because that would make "[t]he language of the

policy . . . the difference between losing all his savings or being able to continue to pay bills during retirement." That result would, they think, frustrate the CCPA's purpose of "allow[ing] retirees to continue to participate in the economy."

Nevertheless, the CCPA does not apply here. To be "earnings" under the CCPA, retirement fund payments, as much as anything, must be "compensation paid or payable for personal services." 15 U.S.C. § 1672. Even if Michael's or his employer's payments into the ERISA plan might have been "earnings" when the payments were made, he is no longer covered by that plan. Upon retirement, Michael rolled over the ERISA plan in a lump sum to the company-run IRA plan.

Michael is not required to receive periodic payments from the IRA as from an ERISA-governed pension plan, and after his cash-out and deposit into a new retirement account, a lump-sum payment from the new account is not compensation paid for personal services, *United States v. Sayyed*, 862 F.3d 615, 619 (7th Cir. 2017) ("A lump-sum distribution of retirement funds is clearly not compensation paid for personal services or periodic payments pursuant to a retirement program."); *see also DeCay*, 620 F.3d at 543 (deeming "payments made from an *employer's* retirement program *to an employee*" "'earnings' under the CCPA" (emphasis added)); *Usery v. First Nat'l Bank of Ariz.,* 586 F.2d 107, 110–111 (9th Cir. 1978) (wages are no longer "earnings" once deposited into an employee's bank account). Because the funds to be garnished are not compensation paid for personal services, they are not "earnings," and the CCPA's limit on garnishment does not apply.

## CONCLUSION

The district court's garnishment order is **AFFIRMED**.