# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2024

Lyle W. Cayce
Clerk

No. 24-60014

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

RALPH LEON STINSON, JR.,

*Defendant*,

ELLEN O. STINSON,

*Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:15-CR-20-1

Before CLEMENT, OLDHAM, and WILSON, *Circuit Judges*.
CORY T. WILSON, *Circuit Judge*:

After Mississippi resident Leon Stinson pled guilty to conspiracy to engage in bank fraud and was ordered to pay restitution, the Government sought to garnish assets including retirement accounts titled solely in the name of Leon's wife, Ellen. The district court concluded that Ellen's accounts were marital property in which Leon and Ellen both had a "100%

undivided interest." The court therefore ordered the immediate liquidation of the accounts and transfer of their full cash value to the court clerk.

The question is whether, under Mississippi law, a person has a property interest in assets titled solely in his or her spouse's name that may be garnished under the governing federal statutes. Caselaw and secondary sources strongly suggest that there is no such interest. In Mississippi, property is only classified as "marital property" when a chancery court effectuates "equitable distribution" of a divorcing couple's assets. Until then, a person does not, simply by virtue of marriage, have an interest in property titled solely in his or her spouse's name. The district court therefore erred in concluding that Ellen's accounts were marital property subject to garnishment by the Government.

## I.

After Ralph Leon Stinson, Jr. (Leon) pled guilty in the Southern District of Mississippi to conspiracy to engage in bank fraud, the district court ordered him, jointly and severally with his co-defendant son, to pay more than $3.6 million in restitution. The Government applied for a writ of garnishment to be served upon brokerage firm Edward D. Jones & Co., L.P. (Edward Jones), pursuant to the Mandatory Victims Restitution Act and the Federal Debt Collection Procedures Act. The court clerk served the writ on Edward Jones, ordering it to withhold and retain all property in which Leon or his wife, Ellen, had a "substantial nonexempt interest." Edward Jones answered that it held one individual retirement account (IRA) for the benefit of Leon and three accounts for the benefit of Ellen: a "[f]lex [i]ndividual [a]ccount" worth nearly $2,000, and two IRAs worth more than $150,000

combined.[1] Ellen moved to dismiss the writ of garnishment, asserting that Leon has no property interest in her accounts.

The district court ordered an evidentiary hearing on Ellen's motion, expressing its "interest[] in obtaining evidence regarding," among other things, "contributions made to [Ellen's] retirement accounts." During the hearing, "anticipat[ing] that this may need to be finally resolved by the . . . appeal court," the district court persisted in seeking evidence on "the source of the money in Ms. Stinson's accounts." Ellen's counsel conceded that he did not "have that evidence."

Weighing Ellen's motion to dismiss against the evidence adduced during the hearing, the district court identified the dispositive issue as whether, under Mississippi law, Leon had a cognizable property right to retirement-account assets held solely in Ellen's name. Noting that Mississippi is "the only state with a [c]ourt defined property law," the district court applied the Mississippi Supreme Court's definition of "marital property" articulated in *Hemsley v. Hemsley* "for the purpose of divorce [settlements]," namely: "any and all property acquired or accumulated during the marriage." 639 So. 2d 909, 915 (Miss. 1994). The district court concluded that (1) Ellen's retirement accounts were presumably marital property, and (2) Leon and Ellen both had a "100% undivided interest" in them because Ellen offered no evidence to establish that "her IRA accounts" were "solely hers." The court therefore denied Ellen's motion to dismiss the writ of garnishment, and ordered Edward Jones to liquidate the Stinsons' accounts and transfer their cash value to the court clerk immediately. Ellen timely appealed.

_____

[1] The district court and the parties refer to all three of Ellen's Edward Jones accounts as retirement accounts. We do the same.

No. 24-60014

## II.

We review garnishment orders for abuse of discretion. *United States v. Elashi*, 789 F.3d 547, 548 (5th Cir. 2015) (citing *United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2010)). "A district court necessarily abuses its discretion if its conclusion is based on an erroneous determination of the law." *Id.* (same). We "review *de novo* a district court's determination of state law." *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

## III.

## A.

Under the Mandatory Victims Restitution Act (MVRA), a court sentencing a defendant convicted of a covered federal crime (such as the one to which Leon Stinson pled guilty) "shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). The Government may enforce MVRA restitution orders "against all property or *rights to property*" of the defendant. *Id.* § 3613(a) (emphasis added); *see id.* §§ 3663A(d), 3664(m)(1)(A). "[F]ederal law . . . affixes a lien on [the] defendant's property and rights to property," but it is state law that "defines the property interests to which the lien attaches." *United States v. Berry*, 951 F.3d 632, 635 (5th Cir. 2020). "In this context, federal law 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'" *United States v. Mire*, 838 F.3d 621, 626 (5th Cir. 2016) (quoting *United States v. Craft*, 535 U.S. 274, 278 (2002)).

The Federal Debt Collection Procedures Act (FDCPA) provides an avenue for enforcing an MVRA order. Under the FDCPA, "[a] court may issue a writ of garnishment against property . . . in which [a] debtor has *a substantial nonexempt interest* and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy [a] judgment

4

against the debtor." 28 U.S.C. § 3205(a) (emphasis added). The FDCPA also states that "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." *Id.*

## B.

Ellen presents a fairly straightforward argument that Leon has no "substantial nonexempt interest" in her retirement accounts. Noting that Mississippi has an equitable distribution system for dividing marital property rather than a community property system, she offers the Mississippi Supreme Court's explication in *Carnathan v. Carnathan* that equitable distribution principles, unlike community property principles, are operative only at divorce. 722 So. 2d 1248, 1252 (Miss. 1998). Ellen also quotes *Carnathan* for the proposition that "equitable distribution would only give [Leon] a property interest at the time of divorce." *Id.* She bolsters her position with additional Mississippi Supreme Court caselaw, an unpublished opinion of this court, and secondary sources.

The Government ventures a more nuanced counterargument. It frames *Hemsley* as having "created property rights for both spouses in property acquired during the marriage," "providing that the right[s] would only be applied for purposes of equitable distribution in a divorce proceeding." Essentially, the Government asserts that "Mississippi law conveys an interest [presently] to allow marital property to be equitably divided later." The Government acknowledges the Mississippi Supreme Court's statement in *Ferguson v. Ferguson* that "no right to property vests by virtue of the marriage relationship alone" outside the context of divorce. 639 So. 2d 921, 928 (Miss. 1994). But the Government argues:

> [T]he question is not whether Mr. Stinson has a vested (defined) ownership in the property held in his wife's name

5

alone.  Rather, the question is whether Mr. Stinson has a "stick" within the "bundle of sticks" that provides him some interest or right to that property.  He does.  Mississippi law provides that stick through the principle of marital property.  Mr. Stinson's property interest is tangible and is not merely an expectancy.  Rather, it is a beneficial interest that Mr. Stinson enjoys during the marriage and is entitled to have severed from the relationship upon dissolution of the marriage.

The Government contends that, during marriage, each spouse has a whole, "undivided, equal interest in marital property"—but it concedes that, until a spouse files for divorce, "the spouse whose name appears on the title, deed, or bank account may unilaterally dispose of such property" and thereby eliminate the other spouse's supposed interest in it.

## C.

Ellen's position rests on convincing support from Mississippi caselaw and secondary sources.  But these authorities do not squarely answer the question whether, under Mississippi law, a judgment debtor has a cognizable property right—a "substantial nonexempt interest" in the FDCPA's vernacular—in accounts titled only in his or her spouse's name, such that they may be garnished to satisfy the judgment.  "[I]n the absence of on-point Mississippi law, our primary obligation is to make an *Erie*[2] guess as to how the Mississippi Supreme Court would decide the question before us." *Keen v. Miller Env't Group, Inc.*, 702 F.3d 239, 243 (5th Cir. 2012) (alterations accepted, and citations and internal quotation marks omitted).  "When making an *Erie* guess, our task is to attempt to predict state law, not to create or modify it." *Id.* (citation and internal quotation marks omitted).  "We consider Mississippi Supreme Court cases that, while not deciding the issue,

---

2 *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

provide guidance as to how the Mississippi Supreme Court would decide the question before us." *Id.* at 244 (alterations accepted, and citations and internal quotation marks omitted).

"[T]hrough an evolution of case law, [the Mississippi Supreme] Court has abandoned the title theory method of distribution of marital assets [at divorce] and evolved into an equitable distribution system." *Ferguson*, 639 So. 2d at 926–27.  Under the former method of dividing spouses' assets at divorce, Mississippi chancery courts "merely determined title to the assets and returned that property to the title-holding spouse." *Id.* at 926; *cf.* *McCraney v. McCraney*, 43 So. 2d 872, 873 (Miss. 1950) (stating, in a divorce suit, "we know of no authority for a court to divest the husband of the title to his property and to vest the title in the wife by judicial fiat or decree").  By contrast, under the equitable distribution system, "[a]ssets acquired or accumulated during the course of a marriage are" deemed marital property "subject to equitable division [upon divorce] unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Hemsley*, 639 So. 2d at 914.

The Government contends that garnishing courts should treat as marital property any assets owned by spouses in an intact marriage that, were they to divorce, a Mississippi chancery court would deem subject to equitable distribution.  To support its argument that equitable distribution principles confer upon Leon a garnishable "stick" in the bundle of property rights even before divorce, the Government proffers *Drye v. United States*, 528 U.S. 49 (1999).  In *Drye*, the Supreme Court, construing the phrase "all property and rights to property" in the federal tax code, instructed:  "When Congress so broadly uses the term 'property,' we recognize . . . that the Legislature aims to reach every species of right or interest protected by law and having an exchangeable value." *Id.* at 56 (citation and internal quotation marks omitted).

No. 24-60014

But even acknowledging that the MVRA reaches not just property but also "rights to property," 18 U.S.C. § 3613(a), and that the FDCPA's definition of "property" is likewise broad,[3] the Government's reasoning does not surmount the FDCPA's requirement that a debtor's interest in property be "substantial," 28 U.S.C. § 3205(a). That is because Leon has no cognizable interest—let alone a substantial one—in Ellen's retirement accounts under the Mississippi Supreme Court's clear demarcation of the property rights held by spouses during marriage.

To begin, the Mississippi Supreme Court stated in *Ferguson*:

> [N]o right to property vests by virtue of the marriage relationship alone prior to entry of a judgment or decree granting equitable or other distribution pursuant to dissolution of the marriage. Thus the rights of alienation and the laws of descent and distribution are not affected by our recognition of marital assets.

639 So. 2d at 927–28. Then, in *Carnathan*, the Court contrasted the community property system—"a complete system of marital property [that] governs spousal ownership of property during an intact marriage, upon divorce, and at death"—with Mississippi's equitable distribution system, which "only applies at divorce." 722 So. 2d at 1252. "[U]nder the community property system, [Spouse A] would have a vested one-half interest in all the assets accumulated during the marriage even though the title to such assets was in [Spouse B's] name." *Id.* "Conversely, equitable

---

[3] Though the Government does not cite to it, the FDCPA's definition of "property" expressly includes contingent future interests. 28 U.S.C. § 3002(12). But as we shortly discuss, despite the breadth of garnishable property interests, Leon's "interest" in Ellen's accounts is speculative at best because it would arise only in the event that (1) the Stinsons divorce, (2) a chancellor determines that Ellen's accounts are marital property, and (3) the chancellor awards some of the accounts' funds to Leon—and (4) Leon's interest would then only extend to that currently unknowable portion of Ellen's accounts.

distribution *would only give [Spouse A] a property interest at the time of divorce*." *Id.* (emphasis added). The Government has not explained how its position survives *Carnathan*. Nor did the district court address *Carnathan*.

Plumbing deeper, neither the Government nor the district court engaged with the seminal scholarly work on Mississippi's marital property system, which the Mississippi Supreme Court explicitly endorsed in *Carnathan*. 722 So. 2d at 1252 (citing Deborah H. Bell, *Equitable Distribution: Implementing the Marital Partnership Theory Through the Dual Classification System*, 67 MISS. L.J. 115, 130–31 (1997)); *id.* at 1252 n.1 (stating that Professor Bell "provides an excellent analysis of how marital property is divided under each system"). Encapsulating Mississippi's property regime, Professor Bell persuasively delineates the scope of spousal property rights that determines this case: "The common law states [that] use equitable distribution have, in effect, chosen to use two marital property systems—equitable distribution at divorce, *and the title system for all other purposes*." Bell, *Equitable Distribution*, 67 MISS. L.J. at 130–31 (emphasis added). "Only if [spouses] divorce will equitable distribution and the corresponding notion of marital property become operative." *Id.* at 131.

Putting these pieces together, we conclude the Mississippi Supreme Court would likely hold that Leon has no property right, i.e., no substantial interest, in Ellen's Edward Jones retirement accounts. Beyond Mississippi law, our conclusion is supported by this court's decision in *United States v. Seymour*, 275 F. App'x 278 (5th Cir. 2008). In that case, after a district court ordered Ralph Seymour to pay restitution, the Government served a writ of garnishment on a financial-services firm holding a joint bank account belonging to Ralph and his wife, Judy. *Id.* at 280. Judy objected to the garnishment of what she contended was her half of the joint account. *Id.* "[M]aintain[ing] that, under Mississippi law, title to marital property is not determinative of ownership," Judy invoked Mississippi's equitable

distribution principles and claimed "an equitable interest in half of the funds, based on . . . the funds' being accumulated during the course of [her] marriage" to Ralph. *Id.* at 280–81. But "[u]nder Mississippi law, a joint account is *prima facie* subject to garnishment." *Id.* at 280. And Judy did not assert that "she contributed to, or was given, the account's funds," so as to establish that a certain portion of the account was exclusively hers and therefore exempt from garnishment. *Id.* at 280–81. The *Seymour* panel held that the entire account was subject to garnishment:

> *Ferguson*'s equitable principles have *not* been applied by Mississippi courts to garnishment proceedings. *Ferguson* "devised a method to divide marital assets at divorce", and has not been applied outside that context. Accordingly, it was error for the district court to apply *Ferguson* to conclude Judy Seymour had equitable title to half the funds. Moreover, even if *Ferguson*'s equitable principles could be applied to a garnishment proceeding, *Ferguson* advises: "no right to property vests by virtue of the marriage relationship alone prior to entry of a judgment . . . pursuant to dissolution of the marriage". In sum, Judy Seymour ha[d] no vested right in the joint account solely by virtue of her marriage to Ralph . . . .

*Id.* at 281 (alterations accepted, and internal citations omitted).

The Government has not pointed to any case in which a court has applied Mississippi's equitable distribution principles outside the divorce context. Instead, the Government takes issue with Ellen's reliance on *Seymour* "for the proposition that a spouse has no property interest outside of that prescribed in a divorce proceeding." In the Government's telling, "*Seymour* stands more for the proposition that any existing interest held by a debtor in marital property may be reached by the federal government in its entirety pursuant to the MVRA." This argument is unconvincing. Unlike the present case, *Seymour* involved a debtor who had unquestioned title to an

account that, as a joint account, was "*prima facie* subject to garnishment." 275 F. App'x at 280. So, the more instructive aspect of *Seymour* is that the panel rejected the contention that equitable distribution principles apply to create pre-divorce ownership rights—in the garnishment context, or otherwise.

Like the district court in *Seymour*, the district court here strayed by applying Mississippi's equitable distribution principles outside of the divorce context to "define[] the property interests to which the [Government's] lien attaches" in Leon's case. *Berry*, 951 F.3d at 635. In doing so, the district court elided that *Hemsley* "define[d] marital property" explicitly—and specifically—"for the purpose of divorce," 639 So. 2d at 915, a limitation amplified by subsequent Mississippi cases, *e.g.*, *Carnathan*, 722 So. 2d at 1252; *accord* Bell, *supra*, at 131–32. Instead, the court drew upon Fifth Circuit caselaw applying Texas community property principles to hold that, absent proof that her accounts were effectively her "separate" property, Ellen's retirement accounts were marital property in which Leon had an attachable "100% undivided interest."[4] The district court's approach has intuitive appeal, especially considering the broad reach that the MVRA and FDCPA afford the Government in attaching and garnishing "property . . . in which [a] debtor has a substantial nonexempt interest." 28 U.S.C. § 3205(a).[5] But the court's conclusion does not comport with Mississippi's "two marital

_____

[4] This conclusion is all the more striking because, even in a community property state, Leon would only have a 50% interest in Ellen's accounts. *See Berry*, 951 F.3d at 638; *Carnathan*, 722 So. 2d at 1252. And in Mississippi, equitable distribution, guided by the numerous *Ferguson* factors, is hardly guaranteed to result in neat 50%–50% division, let alone a 100%–0% division in Leon's favor. *See* 639 So. 2d at 928.

[5] The Government expresses concern with enabling "a defendant debtor . . . to shield substantial assets by simply placing those assets in the name of a spouse." But that fear is overblown given, for example, the availability of actions for fraudulent transfer. 28 U.S.C. § 3304.

property systems," Bell, *supra*, at 130–31, under which Ellen's separately titled accounts are her sole property, in which Leon has no garnishable interest.

## IV.

The district court erred in denying Ellen Stinson's motion to dismiss the Government's writ of garnishment as to her three Edward Jones retirement accounts. Ellen has sole title to the accounts, and under Mississippi law, Leon Stinson therefore has no substantial property interest in them. It follows that the district court erred in compelling Edward Jones to liquidate Ellen's accounts and pay the proceeds to the court clerk. We accordingly reverse both orders and remand with instructions to grant Ellen's motion as to her Edward Jones retirement accounts.

REVERSED AND REMANDED.