**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee*,

v.

ELLEN SUZANN SWENSON,
 *Claimant-Appellant*,

DOUGLAS L. SWENSON; MARK A.
ELLISON; JEREMY S. SWENSON;
DAVID D. SWENSON,
 *Defendants.*

No. 18-30215

D.C. No.
1:13-cr-00091-
BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted February 3, 2020
Seattle, Washington

Filed August 19, 2020

Before: MILAN D. SMITH, JR., N. RANDY SMITH, and
DANIEL A. BRESS, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by Judge
N.R. Smith

# SUMMARY[*]

## Criminal Law / Garnishment

In a case in which the government sought to enforce an order pursuant to the Mandatory Victims Restitution Act (MVRA) that Douglas Swenson pay restitution following his conviction for wire and securities fraud, the panel (1) reversed the district court's order denying his wife Suzann Swenson's objections to a writ of garnishment sought by the government against a bank account that held Mrs. Swenson's Social Security benefits, (2) vacated the district court's order directing the disposition of the funds pursuant to the writ of garnishment, and (3) remanded for further proceedings.

The panel held that the district court's disposition order pursuant to 28 U.S.C. § 3205(c)(7) is a final, appealable order that this court has jurisdiction to review.

The panel held that the district court erred by concluding that Mrs. Swenson's Social Security benefits were subject to garnishment to satisfy her husband's restitution order. The panel rejected the government's contention that the funds are subject to garnishment because Swenson has a right to Mrs. Swenson's Social Security benefits pursuant to community property principles of Idaho law. The panel noted that the Idaho Court of Appeals has ruled that the statutory scheme of the Social Security Act is in actual conflict with, and thus preempts, the state community property law that would otherwise dictate the delineation of property; and that Mrs.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Swenson's benefits are therefore not a divisible community asset. The panel wrote that because Mrs. Swenson's benefits are not Mr. Swenson's property, and Mr. Swenson has no right to them, the MVRA does not override the Social Security Act's anti-alienation provision as to Mrs. Swenson's benefits, and thereby permit the government to reach them.

Judge N.R. Smith concurred that this court has jurisdiction, and otherwise dissented. He wrote that the MVRA allows the government to garnish the account because Mr. Swenson has an interest in the account under Idaho's community property law, a conclusion the majority avoids by ignoring the fact that federal law does not preempt Mr. Swenson's interest or otherwise bar the government from garnishing it.

**COUNSEL**

Jed W. Manwaring (argued) and Christy A. Kaes, Evans Keane LLP, Boise, Idaho, for Claimant-Appellant.

William M. Humphries (argued), Assistant United States Attorney; Bart M. Davis, United States Attorney; United States Attorney's Office, Boise, Idaho; for Plaintiff-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Following a conviction for wire and securities fraud, Douglas Swenson (Mr. Swenson) was ordered to pay restitution pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. The government sought to enforce the restitution order pursuant to the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001–3308. To do so, the government applied for a post-judgment writ of garnishment against a bank account (Account 5784) that held the Social Security benefits of Mr. Swenson's wife, Suzann Swenson (Mrs. Swenson), on the theory that those funds were subject to garnishment pursuant to community property principles of Idaho state law. Mrs. Swenson objected to the writ. *See* 28 U.S.C. § 3205. The district court denied Mrs. Swenson's objections, concluding that the MVRA's enforcement provision, 18 U.S.C. § 3613(a) (Section 3613(a)), overrides the protections afforded Social Security benefits under the Social Security Act (SSA), 42 U.S.C. § 407(a), so the benefits were garnishable community property. Mrs. Swenson appealed. We hold that we have jurisdiction, following the district court's entry of

an order directing the disposition of the funds at issue pursuant to the writ of garnishment. We also reverse the district court's disposition order and hold that Mrs. Swenson's Social Security benefits are not subject to garnishment pursuant to the MVRA in connection with her husband's criminal restitution order.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2014, a jury found Mr. Swenson guilty of 44 counts of securities fraud and 34 counts of wire fraud. Mr. Swenson was sentenced to 240 months in prison and ordered to pay over $180 million in restitution pursuant to the MVRA. On July 9, 2018, the government initiated garnishment proceedings pursuant the FDCPA, and moved for enforcement against certain bank accounts belonging to one or both of the Swensons.[1] *See* 28 U.S.C. § 3205. The

---

[1] The MVRA allows the government to enforce restitution orders pursuant to the FDCPA or individual state laws. *See In re Partida*, 862 F.3d 909, 913 (9th Cir. 2017). The FDCPA "sets forth the exclusive civil procedures for the United States . . . to recover a judgment on . . . an amount that is owing to the United States on account of . . . restitution." *United States v. Mays*, 430 F.3d 963, 965 (9th Cir. 2005) (quoting 28 U.S.C. §§ 3001(a)(1), 3002(3)(B)). 28 U.S.C. § 3205 sets forth the procedures for garnishment if the government elects to proceed under the FDCPA. As relevant here, those procedures provide that the government may initiate garnishment proceedings by filing an application for a writ of garnishment before the district court. 28 U.S.C. § 3205(b)(1). If the government satisfies the statutory requirements for a writ, the district court issues a writ of garnishment, and the government serves copies on the judgment debtor and the garnishee. *Id.* §§ 3205(b), (c)(3). The garnishee, who is the person or entity with custody, control or possession of the property subject to the writ, is directed to file an answer describing the property. *Id.* § 3205(c)(4). The government and the judgment debtor then have 20 days to file written objections to the answer and request a hearing. *Id.* § 3205(c)(5). Within five days of the hearing, or if no hearing is requested, the district court is required to enter

government filed an application for a writ of garnishment that encompassed four accounts: three held in Mrs. Swenson's name, including Account 5784, and one joint account. Following receipt of an objection from Mrs. Swenson, the government released two of the accounts held in her name. Neither Mr. nor Mrs. Swenson objected to the writ with respect to the jointly held account. At issue in this appeal is Account 5784 held at Idaho Independent Bank, the remaining account belonging to Mrs. Swenson. Mrs. Swenson objected to the writ of garnishment for Account 5784, claiming that the funds it held consisted solely of deposits of her Social Security benefits, and therefore were exempt from garnishment because those funds were not community property under Idaho law.

The district court denied Mrs. Swenson's objections to the writ of garnishment regarding Account 5784, reasoning that her Social Security benefits were community property because Mrs. Swenson earned the right to receive them while working during her marriage to Mr. Swenson. The court recognized that those benefits would not be garnishable in "an action brought to collect on a common debt," but concluded that pursuant to Section 3613(a), "the protection afforded [S]ocial [S]ecurity payments against common garnishment proceedings or the division of community property in divorce proceedings, has no relevance in a collection action under the MVRA." The district court concluded that because Section 3613(a) "specifically provides that a judgment ordering restitution may be

---

a disposition order "directing the garnishee as to the disposition of the judgment debtor's nonexempt interest in" the property. *Id.* § 3205(c)(7). The garnishment terminates if (1) the court issues an order quashing the writ; (2) the property in the garnishee's possession is exhausted; or (3) the debt for which the writ was issued is satisfied. *Id.* § 3205(c)(10).

enforced against 'all property or rights to property' of the defendant," and a spouse's retirement and pension benefits are community property, the funds in Account 5784 were "presumed community property and subject to continued garnishment." The district court entered an order denying Mrs. Swenson's objections with respect to Account 5784, and Mrs. Swenson filed a notice of appeal.

However, in light of the notice of appeal, the government did not seek, and the district court did not immediately enter, an order directing the disposition of the garnished funds pursuant to the FDCPA. *See* 28 U.S.C. § 3205(c)(7) (requiring a court to enter an order directing the garnishee to dispose of the debtor's nonexempt property within five days of a hearing). Following oral argument in this appeal, the parties stipulated to suspend the appeal to allow further proceedings in the district court. Thereafter, and as relevant here, the district court entered disposition orders as to the two remaining accounts subject to the writ of garnishment, including Account 5784. We granted the parties' subsequent stipulation to augment the record with the district court's latest orders, and we resume the appeal.

## STANDARDS OF REVIEW

Whether this court has subject matter jurisdiction is a question we review de novo. *Chang v. United States*, 327 F.3d 911, 922 (9th Cir. 2003). We likewise review de novo decisions involving the interpretation of federal statutes like the MVRA, *cf. UFCW Local 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018), and "questions of law regarding the application of restitution statutes," *United States v. Berger*, 574 F.3d 1202, 1204 (9th Cir. 2009).

## ANALYSIS

### I.  Appellate Jurisdiction

We have jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291.  The government initially sought to dismiss this case for lack of appellate jurisdiction, contending that the district court's order denying Mrs. Swenson's objections to the writ of garnishment was not a final appealable order.  However, after Mrs. Swenson filed the notice of appeal, and during a temporary suspension of this appeal, the district court entered disposition orders pursuant to 28 U.S.C. § 3205(c)(7), directing the garnishee bank to disburse the funds held in the two accounts subject to the writ of garnishment, including Account 5784. Following those further proceedings in the district court, we are satisfied this case is properly before us.

Our caselaw does not conclusively resolve which post-judgment orders entered pursuant to the FDCPA are final for purposes of appeal.  In *United States v. Mays*, 430 F.3d 963 (9th Cir. 2005), we concluded that a district court's denial of a motion to dismiss a writ of garnishment was a final judgment where there were "no other matters before the district court relating to [the defendant's] criminal case." *United States v. Mays*, 430 F.3d 963, 965 (9th Cir. 2005). That holding turned on the fact that the denial order resolved all pending matters in the criminal case, including the post-judgment garnishment proceedings.  *Id.*  On that basis, we distinguished *United States v. Moore*, 878 F.2d 331 (9th Cir. 1989), where the appeal involved an *interlocutory* order denying the defendant's motion to quash a writ of

garnishment.[2]  *Id.* at 331.  On its face, *Mays* seems to hold that orders denying motions to dismiss a writ of garnishment, or other orders akin thereto, including denials of a debtors' objections to the writ, can be final, appealable orders.

However, upon closer investigation, the district court in *Mays* had entered an "order of garnishment" after the defendant filed a notice of appeal.  Consistent with 28 U.S.C. § 3205(c)(7), that order directed the garnishee to pay to the government the garnished funds.  *See* Order of Garnishment, *United States v. Mays*, No. 98-cr-03213-JM, (S.D. Cal. Aug. 4, 2004), ECF No. 83.  Although the notice of appeal concerned the denial of the motion to dismiss the writ of garnishment and we otherwise did not address the district court's disposition order in our decision, *see Mays*, 430 F.3d at 965, we assumed jurisdiction only after entry of the disposition order.

The Fifth and Seventh Circuits have held that disposition orders directing the release of funds for garnishment under the FDCPA are final, appealable orders.  *See United States v. Branham*, 690 F.3d 633, 635 (5th Cir. 2012); *United States v. Kollintzas*, 501 F.3d 796, 799, 801–02 (7th Cir. 2007); *United States v. Minneman*, 6 Fed. App'x 422, 424 (7th Cir. Apr. 24, 2001) ("The disposition order concludes the garnishment proceedings and therefore that order, and not the order denying the debtor's objections, is the final order

---

[2] *Moore* is distinguishable for another reason—that case was decided before passage of the FDCPA, when the government would have had to follow state procedural laws to garnish property pursuant to a restitution order.  *See United States v. Parker*, 927 F.3d 374, 379 (5th Cir. 2019).  That case did not determine which post-judgment garnishment orders issued under the FDCPA are final for purposes of appeal.  *Id.*

from which a debtor should appeal."); *see also United States v. Grigsby*, 630 F. App'x 838, 841 (10th Cir. Oct. 29, 2015).

We agree with the reasoning of our sister circuits that disposition orders directing release of the garnished funds conclude garnishment writ proceedings. Pursuant to the FDCPA, the garnished funds remain in the garnishee's possession unless and until the court orders those funds disbursed in a disposition order. *See* 28 U.S.C. § 3205(c)(7). The denial of a judgment debtor's objections may not be final for any number of reasons, including, for example, if a judgment debtor files a motion for reconsideration. A disposition order (or termination of the garnishment otherwise, *see id.* § 3205(c)(10)) concludes litigation of the writ on the merits and is thus a final judgment for purposes of appeal.

To the extent *Mays* held that the denial of objections to a writ of garnishment is a sufficiently final order for purposes of appellate jurisdiction, there is reason to question that precedent. The district court below therefore advisedly entered § 3205(c)(7) disposition orders when questions about our jurisdiction were raised. Those orders concluded litigation of the post-judgment writ proceedings on the merits and left nothing more for the district court to resolve regarding Mrs. Swenson. Because the district court entered these disposition orders, it is clear we have appellate jurisdiction. Whether *Mays* would have allowed us to assume jurisdiction based merely on the denial of Mrs. Swenson's objections to the writ is thus no longer an issue here.

For the reasons we have given, the district court's § 3205(c)(7) disposition order is a final, appealable order that we have jurisdiction to review. *Cato v. Fresno City*, 220 F.3d 1073, 1074 (9th Cir. 2000) (holding that the court

"can assume jurisdiction based on a prematurely filed notice of appeal when 'subsequent events can validate [the] prematurely filed appeal'" (quoting *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 681 (9th Cir. 1980))).[3]

## II. Whether Account 5784 is Subject to Garnishment under the MVRA

Mrs. Swenson asserts that the district court erred by concluding her Social Security benefits were subject to garnishment to satisfy her husband's criminal restitution order under the MVRA. We agree.

The "MVRA rests on the recognition that '[i]t is essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that [the] *offender* be held accountable to repay these costs.'" *United States v. Novak*, 476 F.3d 1041, 1043 (9th Cir. 2007) (en banc) (emphasis added) (quoting S. Rep. No. 104-179, at 18 (1995)). To ensure that accountability, Section 3613(a) consolidated and strengthened the procedures available to the government for collecting unpaid restitution. *In re Partida*, 862 F.3d 909, 913 (9th Cir. 2017) (citing S. Rep. No. 104-179, at 12). The statute provides:

> The United States may enforce a judgment imposing a fine in accordance with the

---

[3] Because we hold that the disposition orders concluded the garnishment proceedings at issue and there were no further claims, we conclude that a Rule 54(b) certification of the disposition order was not required for this appeal. *Cf. United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 798–99 (9th Cir. 2017) (concluding that no Rule 54(b) certification was required for appeal from order denying application to sever water rights when "no additional applications . . remain[ed] pending").

practices and procedures for the enforcement
of a civil judgment under Federal law or State
law. Notwithstanding any other Federal law
(including section 207 of the Social Security
Act), a judgment imposing a fine may be
enforced against all property or rights to
property of the person fined[.]

18 U.S.C. § 3613(a).

We have recognized from the breadth of the statute's text
Congress's intent to broaden the government's collection
powers to reach all of a *defendant's* assets. *See, e.g.*,
*Partida*, 862 F.3d at 913 ("By providing that the government
'may enforce a judgment imposing a fine in accordance with
the practices and procedures for the enforcement of a civil
judgment under Federal law,' the MVRA was broadening,
rather than curtailing, the government's collection
powers."); *Novak*, 476 F.3d at 1046 ("By its use of the '*all*
property or rights to property' language, . . . Congress has
made quite clear that the totality of defendants' assets will be
subject to restitution orders." (citation omitted)).

To effectuate that intent, Section 3613(a) explicitly
overrides conflicting federal laws that would otherwise
prohibit collection of a defendant's assets pursuant to a
restitution order, including the SSA's anti-alienation
provision, 42 U.S.C. § 407(a).[4]  *Novak,* 476 F.3d at 1046

---

[4] Section 207 of the SSA mandates that "[t]he right of any person to
any future payment . . . shall not be transferable or assignable, at law or
in equity, and none of the moneys paid or payable or rights existing under
this subchapter shall be subject to execution, levy, attachment,
garnishment, or other legal process, or to the operation of any bankruptcy
or insolvency law." 42 U.S.C. § 407(a). It further specifies that "[n]o
other provision of law . . . may be construed to limit, supersede, or

("The Supreme Court has indicated as a general proposition that statutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws."). Interpreting Section 3613(a), we previously concluded that "by making clear that the 'notwithstanding' clause 'includes' the one federal anti-alienation provision that demands explicit statutory override [42 U.S.C. § 407(a)], Congress manifested that § 3613(a) means what it says—that it reaches '*all* property or rights to property' not excepted . . . including property otherwise covered by federally mandated anti-alienation provisions." *Id.* at 1048 (citation omitted). Accordingly, both the text of Section 3613(a) and our caselaw make clear that, in the event of a conflict where the SSA's anti-alienation provision would otherwise protect a defendant's Social Security benefits from collection, Section 3613(a) empowers the government to garnish those benefits.

However, the question here is not whether *Mr.* Swenson's Social Security benefits are garnishable pursuant to the MVRA, but whether his wife's are. For Mrs. Swenson's Social Security benefits to be garnishable, they must be considered Mr. Swenson's property, or Mr. Swenson must have a right to those benefits. *See id.* at 1061 ("[A] necessary prerequisite to enforcement of a restitution order under MVRA" is determining a defendant's "property or rights to property.").

The government contends Mr. Swenson has a right to Mrs. Swenson's Social Security benefits pursuant to community property principles of Idaho law. But the Idaho Court of Appeals has ruled that the statutory scheme of the SSA is in actual conflict with, and thus preempts, the state

---

otherwise modify the provisions of this section except to the extent that it does so by express reference." *Id.* § 407(b).

community property law that would otherwise dictate the delineation of property. *See Sherry v. Sherry*, 701 P.2d 265, 270 (Idaho Ct. App. 1985). Mrs. Swenson's benefits therefore, according to the Idaho Court of Appeals, "are not a divisible community asset."[5] *Id.* The government advances no alternative theory to support its claim that Mrs. Swenson's benefits are her husband's property.

Because Mr. Swenson's "property or rights to property" does not include Mrs. Swenson's Social Security benefits, there is no clash between the MVRA and the SSA's anti-alienation provision, as it pertains to the funds in Account

---

[5] Our dissenting colleague contends that we must first look to state law to determine a defendant's property rights. But state law does not control when federal law preempts state law. The dissent's reliance on authority involving the application of state community property laws that are *not* preempted by federal law thus is unavailing. *See, e.g., United States v. Elashi*, 789 F.3d 547, 552 (5th Cir. 2015) (discussing two unpublished decisions in which the 5th Circuit applied state community property law to determine ownership interests in real property and a bank account not purporting to hold Social Security benefits). Likewise, the cases the dissent cites to support the contention that "the Social Security Act often looks to and relies on state law to determine whether an individual has rights or access to Social Security benefits" are inapposite. Those cases apply state law to determine parentage where a child claims entitlement to child survivor benefits by virtue of the child's relation to a deceased parent. *See Vernoff v. Astrue*, 568 F.3d 1102, 1104–12 (9th Cir. 2009) (considering whether state law treated the claimant as a child in order to be eligible for child survivor benefits); *Woodward v. Comm'r of Soc. Sec.*, 760 N.E.2d 257 (Mass. 2002) (upon certification from the federal district court, answering whether children "resulting from posthumous reproduction may enjoy the inheritance rights of 'issue' under the Massachusetts intestacy statute"). Those cases have no application here, where no party disputes that Mr. and Mrs. Swenson are legally married.

5784, for the notwithstanding clause to resolve.[6]  *See Frank's Landing Indian Cmty. v. Nat'l Indian Gaming Comm'n*, 918 F.3d 610, 619 (9th Cir. 2019) ("[T]he word 'notwithstanding' demonstrates 'which provision prevails in the event of a clash.'" (quoting *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 939 (2017)).  We do not doubt that if *Mr.* Swenson's Social Security benefits were at issue, Section 3613(a) would override the SSA's anti-alienation provision as to his benefits, and the government would be able to garnish them.  But because *Mrs.* Swenson's benefits are not Mr. Swenson's property, and Mr. Swenson has no right to them, the MVRA does not override the anti-alienation provision as to Mrs. Swenson's benefits, and thereby permit the government to reach them.

The government contends that the MVRA sweeps aside the SSA's anti-alienation provision generally, without regard to the owner of the Social Security benefits at issue, and with it, the actual conflict between the SSA's statutory scheme and state community property law.  According to the government, in the absence of the SSA's anti-alienation provision, state community property law governs the characterization of Mrs. Swenson's Social Security benefits. Applying the community property presumption under Idaho law, Mrs. Swenson's benefits "were earned and obtained during marriage and are thus presumed community property under Idaho law."  Thus, according to the government, Mrs. Swenson's Social Security benefits are part of the

---

[6] In reaching this conclusion, we do not impermissibly "bypass[]" state law," as the dissent contends, any more than the Idaho court in *Sherry* did.  Nothing in the MVRA or SSA mandates the application of state law when a state court holds that federal law prevails.  Just as in *Novak*, where federal law affected the scope of the defendant's property rights, 476 F.3d at 1061, the SSA is relevant to the delineation of property in this case.

community estate, and they are subject to garnishment to satisfy Mr. Swenson's restitution order.  We disagree.

The government's interpretation would transform the MVRA from a procedural mechanism by which the government collects debts, to a statute that redefines property rights.  The government's position would allow it, in effect, to create a property right in assets that do not belong to the defendant in any context but MVRA garnishment proceedings, for the sole purpose of taking it away.  In other words, the government would be allowed to garnish assets that the defendant would otherwise have no right to, simply because the defendant is subject to a restitution order.[7]

Our decision in *Novak* counsels against this interpretation.  In that case, we held that the government could immediately garnish the corpus of a retirement plan governed by ERISA only to the extent the plan entitled the defendant to demand lump sum payments, and only when those benefits did not require spousal consent to become payable.  *Novak*, 476 F.3d at 1063 ("[B]ecause the government's right is to step into the *defendant's* shoes, it will not be able unilaterally to cash out a retirement plan when ERISA requires that lump sum payments be made payable only with spousal consent.").  If the retirement plan did not provide for lump sum payments, the government would have been able to obtain only "post-retirement payments that otherwise would have gone to the defendant."

---

[7] Our dissenting colleague also adopts this position, conflating the MVRA's intent to reach *all* of a defendant's assets in garnishment proceedings, with a permission for the government to "expand the pool" of a defendant's property beyond that which the defendant would have a right to any other legal proceeding. There is simply no support for the latter contention.

*Id.*  Thus, we concluded that the government could pursue only those assets the defendant was entitled to under the relevant federal statute in the absence of a restitution order. Put another way, the government was entitled to collect on property only to the same extent the defendant had a right to it.

Applying that principle here, the government steps into Mr. Swenson's shoes and is entitled to enforce the restitution order against all of his property, but only to the extent Mr. Swenson himself is entitled to that property.  Irrespective of the restitution order, Mr. Swenson would have no right to Mrs. Swenson's Social Security benefits because the SSA preempts application of Idaho state law community property principles.  *See Sherry*, 701 P.2d at 270.  As a result, the government is likewise prevented from obtaining those benefits.

Because Mr. Swenson had no right to Mrs. Swenson's Social Security benefits, we conclude the district court erred by finding that those benefits were subject to garnishment pursuant to the MVRA.  We **REVERSE** the order denying Mrs. Swenson's objections to the writ of garnishment, **VACATE** the disposition order pertaining to Account 5784 and **REMAND** for further proceedings consistent with this opinion.

N.R. SMITH, Circuit Judge, concurring that we have jurisdiction[1] and otherwise dissenting:

The critical question in this case is simple: Does Mr. Swenson have rights to Account 5784 ("Account") "[n]otwithstanding any other Federal Law"? 18 U.S.C. § 3613(a). In other words, with the MVRA's "'notwithstanding' clause[] broadly sweep[ing] aside potentially conflicting laws," *In re Partida*, 862 F.3d 909, 912 (9th Cir. 2017) (quoting *United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007) (en banc)), can the government reach Mrs. Swenson's Social Security benefits by "step[ping] into [Mr. Swenson]'s shoes"? *Novak*, at 1063.

The MVRA "allow[s] the enforcement of criminal restitution orders against '*all* property or rights to property,' '*notwithstanding* any other Federal law.'" *Id.* at 1046 (alterations adopted) (quoting 18 U.S.C. § 3613(a)). "By its use of the '*all* property or rights to property' language, Congress has made quite clear that *the totality of defendants' assets will be subject to restitutions orders*." *Id.* (emphasis added) (citation omitted). Indeed, "[t]he statutory language 'all property and rights to property,' is broad and reveals on its face that *Congress meant to reach every interest in property*." *Id.* (alterations adopted) (emphasis added) (quoting *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–20 (1985)).

In this case, the MVRA allows the government to garnish the Account consisting solely of Mrs. Swenson's Social

---

[1] I agree with the majority's conclusion that we have jurisdiction over this appeal in light of the disposition order entered by the district court.

Security benefits, because Mr. Swenson has an interest in this property under Idaho's community property law. The majority avoids this conclusion by ignoring the fact that federal law does not preempt Mr. Swenson's interest or otherwise bar the government from garnishing the account. Let me explain.

## I.  The proper analytical framework.

As a threshold matter, the majority failed to clearly identify the proper analytical framework for determining precisely what property is subject to garnishment under the MVRA. The majority's failure to engage in the proper analysis results in its erroneous decision.[2]

The application of the MVRA "involves questions of both state and federal law." *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1067 (9th Cir. 2013). Thus, we apply the MVRA in two steps: we must (1) determine a defendant's property or rights in property under state law, and then (2) determine whether federal law allows the government to garnish the property. *Id.* (noting that only "[a]fter determining that the taxpayer has a property interest under state law" should we consider whether such property can be attached or garnished).

This analytical framework applied in cases in the tax-lien context is instructive in the present context for two reasons. First, the text of the MVRA indicates that courts should look to the analogous tax-lien context for guidance regarding how to execute a garnishment order. *See* 18 U.S.C. § 3613(c) ("A fine imposed pursuant to the [MVRA] . . . is a lien in favor

---

[2] Though I can't go too hard on them, because our circuit has never clearly resolved this issue.

of the United States on all property and rights to property of the person fined *as if the liability of the person fined were a liability for a tax* assessed under the Internal Revenue Code . . . ." (emphasis added)).    This guidance makes sense considering the close parallel in both language and structure between the Internal Revenue Code's provisions allowing for tax liens and the MVRA's provisions allowing for garnishment.  *See Novak*, 476 F.3d at 1049–50.  *Compare* 26 U.S.C. § 6334(c) ("Notwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection     (a)."),     *with*     18     U.S.C.     § 3613(a) ("Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except that" expressly exempted by the statute.).

Second, our sister circuits (that have addressed this issue) have expressly and uniformly adopted the framework set forth in the tax-lien cases.  *See United States v. Berry*, 951 F.3d 632, 635 (5th Cir. 2020) (citing case law from the tax lien context in support of the proposition that though "[f]ederal law creates the lien, . . . state law defines the property interests in which the lien attaches"); *see also United States v. Elashi*, 789 F.3d 547, 548–52 (5th Cir. 2015) (noting that special assessments resulting form garnishment orders issued pursuant to the MVRA "are collected in the same manner as criminal fines and are therefore treated in the same manner as federal tax liens"); *United States v. Smith*, 768 F. App'x 926, 931 (11th Cir. 2019) (unpublished) (adopting the analytical framework from the tax lien context in a case dealing with an MVRA

restitution order).[3]  For these reasons, the analogous tax-levy context and the analyses of our sister circuits informs our approach to the issue before us.[4]

These cases provide a simple, two-step approach (set forth above) to working out precisely what property the government may reach: (1) courts must look to state law to determine whether the defendant has property rights in the property that the government seeks to reach; and (2) if the defendant does have rights in that property, courts must determine whether the defendant's state-delineated rights qualify as "property or rights to property" that the government may garnish under the MVRA.[5]  *See Elashi*,

---

[3] For some reason, the majority attempts to make a factual distinction between these cases and the one before us.  Maj. Op. 14 n.5.  However, this does not change the underlying principle these cases support—that the analytical framework from the tax-lien context is relevant here.

[4] It should be noted that the limited direction we do have in our circuit is consistent with the two-step framework that should apply here.  Indeed, we stated in *Novak* that state law is the usual starting place for our analysis.  476 F.3d at 1061 ("[S]tate law ordinarily informs the delineation of 'property' . . . .").  Though we ultimately looked exclusively to federal law in that case to determine the extent of the defendant's property rights, this exception to the general rule that state law determines rights to property a person has is not applicable in this case for the reasons discussed below.  *See infra* at 28–30.

[5] This straightforward analytical framework is drawn directly from the tax-lien context.  *See Drye*, 528 U.S. at 58 (instructing court to "look initially to state law to determine what rights the [defendant] has in the property the Government seeks to reach, then to federal law to determine whether the [defendant]'s state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal . . . legislation"); *Morgan v. Commissioner*, 309 U.S. 78, 80 (1940) ("State law creates legal interests and rights.  The federal . . . acts designate what interests

789 F.3d at 552 ("Once state-law property interests are defined, federal law controls the consequences."); *see also Smith*, 768 F. App'x at 931 ("As with a tax lien, state law determines the nature of the legal interest a person has in the property sought to be reached."). Put differently, "Federal law creates the [government's right to garnish], but state law defines the property interests to which the lien attaches." *Berry*, 951 F.3d at 635; *accord Elashi*, 789 F.3d at 552. This is the proper framework for the analysis here.

## II. Mr. Swenson has rights to Mrs. Swenson's property under Idaho law.

In concluding that Mr. Swenson has no rights to the Account consisting of Mrs. Swenson's Social Security benefits, the majority claims to rely on state law. However, federal law controls the majority's interpretation of Mr. Swenson's property rights. Indeed, the majority relies on an out-of-context preemption analysis to support its conclusion that *federal law* limits Mr. Swenson's rights to Mrs. Swenson's Account. As per the analysis set forth above, I start with Idaho law.

### A. Idaho law: a presumption of community property.

In Idaho, "all property acquired after marriage" is presumed to be community property that the government can

---

or rights, so created, shall be taxed."); *Fourth Inv. LP*, 720 F.3d at 1067 ("The federal . . . statute itself 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'" (quoting *United States v. Craft*, 535 U.S. 274, 278 (2002))).

garnish.[6] *See Hoskinson v. Hoskinson*, 80 P.3d 1049, 1062 (Idaho 2003) (holding that the baseline presumption under Idaho state law is that "property acquired after marriage is community property"); *see also Action Collection Serv., Inc. v. Seele*, 69 P.3d 173, 178 (Idaho Ct. App. 2003) (noting that a judgment creditor can garnish the non-debtor spouse's community property to satisfy a debt). Because Mrs. Swenson earned the right to her Social Security benefits while working during her marriage to Mr. Swenson, *see United States v. Swenson*, No. 1:13-cr-00091-BLW, 2018 WL 4701783, at * 2 (D. Idaho Oct. 1, 2018), the moneys resulting from these benefits are presumed to be community property to which Mr. Swenson has a legal interest, *see Estate of Hull v. Williams*, 885 P.2d 1153, 1157 (Idaho Ct. App. 1994). Therefore, Mr. Swenson has a legal interest in the Account.

## B. *Sherry*'s recognition of the preemption of Idaho law does not support the majority's conclusion or analysis.

In holding that the government may not garnish the Account, the majority erroneously claims that Idaho law supports its conclusion that Mr. Swenson has no rights in Mrs. Swenson's Social Security benefits. Maj. Op. 13–14.

---

[6] Mrs. Swenson argues that the Account consisting of Social Security benefits is not garnishable, because Idaho law exempts certain retirement property from attachment or levy. *See* Idaho Code § 11-604A. However, Mrs. Swenson ignores the fact that Idaho Code section 11-604A(2) expressly provides that its exemption from attachment is only applicable "[u]nless otherwise provided by federal law." In this case, the MVRA renders inapplicable these Idaho state law limitations on the attachment of Mrs. Swenson's retirement accounts. *See* 18 U.S.C. § 3613(a) (noting that "a judgment imposing a fine may be enforced against all property or rights to property of the person fined").

Not so. It is true that the Idaho Court of Appeals has declared that Social Security benefits "are not a divisible community asset" in divorce proceedings. *See* Maj. Op. 14 (quoting *Sherry v. Sherry*, 701 P.2d 265, 270 (Idaho Ct. App. 1985)). But, context is king. In *Sherry*, the Idaho Court of Appeals did not declare that Social Security benefits are separate property *as a matter of Idaho law*. 701 P.2d at 270. Instead, and as the majority recognizes, *see* Maj. Op. 13–14, the *Sherry* court reached its conclusion only because that is the result *federal law* demanded in that particular instance, *Sherry*, 701 P.2d at 270 (recognizing "the supremacy clause of the United States Constitution requires that the federal law be given effect over the state law" in that context). Thus, in *Sherry*, the Idaho Court of Appeals never claimed to be interpreting—much less actually changing or replacing—Idaho's long-standing community property regime; it merely found that the Social Security Act—presumably, through that Act's anti-alienation provision[7]—required preemption

---

[7] It should be noted that the precise basis for the Social Security Act's preemption of Idaho's community property law in *Sherry* is unclear. Indeed, the *Sherry* court never explained the exact statutory basis for preemption, instead quoting broad language from California courts, noting that those courts' opinions were "well reasoned," and concluding that "a ruling that [S]ocial [S]ecurity benefits are divisible community assets would seriously interfere with the express statutory scheme of the Social Security Act and is forbidden by the supremacy clause of the United States Constitution." 701 P.2d at 270 (alteration adopted) (quoting *In re Marriage of Nizenkoff*, 135 Cal. Rptr. 189, 192 (Ct. App. 1976)). One case *Sherry* cites in its preemption discussion—*In re Marriage of Cohen*—found preemption of California's community property regime based on § 207's anti-alienation provision. 164 Cal. Rptr. 672, 675–76 (Ct. App. 1980). The other two cases cited by *Sherry* in support of preemption, *In re Marriage of Hillerman* and *In re Marriage of Nizenkoff*, found preemption based on other pieces of the Social Security Act's framework—pieces that do not appear to be applicable to the present situation. *See In re Marriage of*

of Idaho's community property regime in the context of the division of Social Security benefits in divorce proceedings. 701 P.2d at 270.

This distinction between a court interpreting state law and giving effect to federal law over state law is critical here, where we are seeking to understand under step one of the framework—what rights Mr. Swenson had *under state law*. We recently recognized that a federal law's preemption of state laws does not fundamentally change, eliminate, or replace the underlying state law:

> Holding that a state law is preempted by federal law does not . . . render the entire state law "nonexistent" in the way that plaintiffs argue. The state law continues to exist until the legislature that enacted it repeals it. At the same time, any portion of the law that is preempted is unenforceable in court until Congress removes the preemptive federal law or the courts reverse course on the effect of the federal law. *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L.

*Hillerman*, 167 Cal. Rptr. 240, 244–46 (Ct. App. 1980) (highlighting conflict between California's community property regime and the Social Security Act's family benefit plans—conflicts that don't appear to be present in this case); *In re Marriage of Nizenkoff*, 135 Cal. Rptr. at 191–92 (discussing the fact that the Social Security Act has set up protections for divorced spouses—similarly inapplicable here—that creates conflict with California's community property law). Therefore, though it appears that § 207's anti-alienation provision is the only reasonable basis for the Social Security Act's preemption of Idaho's community property law in *Sherry*, I cannot say for sure that this is the case. To the extent this distinction matters, it provides yet another reason (in addition to those noted in note 8, *see infra* at 26 n.8) for us to certify this question to the Idaho Supreme Court.

Rev. 933, 953 (2018) ("State statutes that
contradict 'supreme' federal law continue to
exist as 'laws,' even as they go unenforced,
and they would become enforceable if federal
law were amended or reinterpreted to remove
the conflict.").

*Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1209–10 (9th Cir.
2018) (alteration adopted); *see also Armstrong v.
Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015)
(noting that the Supremacy Clause merely "instructs courts
what to do when state and federal law clash"); Saikrishna B.
Prakash & John C. Yoo, *The Origins of Judicial Review*,
70 U. Chi. L. Rev. 887, 903 (2003) (noting that "the
Supremacy Clause establishes that the Constitution is
*superior to* unconstitutional federal statutes" and that
"[w]hen there is a conflict between the supreme law and state
. . . laws, state judges are to *enforce* the supreme law of the
land" (emphasis added)).  Thus, the Idaho Court of Appeals'
conclusion that Social Security benefits "are not a divisible
community asset" did not change Idaho law; it merely
reflects that court giving federal law effect over Idaho's
community property law in that specific context.[8]  *Sherry*,
701 P.2d at 270.

---

[8] To the extent my good colleagues disagree with me and believe
that *Sherry* actually changed Idaho's community property law in the
context of Social Security benefits, they should have let the Idaho
Supreme Court decide this important question of Idaho law; the
esteemed justices on that court are, after all, the experts and authority on
Idaho law.  And aside from the fact that they are unquestionably better
positioned to say what Idaho law is, I am sure they would be happy to
help this court out with the determination of this question.  Moreover,
our speculation about the meaning of the state law would thus be
"particularly gratuitous" in these circumstances.  *Arizonans for Official*

In ignoring Idaho law, the majority summarily states that "state law does not control when federal law preempts state law." Maj. Op. 14 n.5. This is undoubtedly true. However, the two-step framework set forth above takes preemption into account *in step two of the analysis*.

Put differently, the determination of whether Idaho's law—that all property obtained during marriage is community property, *Hoskinson*, 80 P.3d at 1062—is enforceable (i.e. preempted or not) should not be conflated with the threshold question that must be answered in step one: What is Idaho law? Only after this step-one question has been answered should we ask whether federal law nevertheless limits the defendant's rights under step two of the analysis. Indeed, whether Idaho law has been (or, here, remains) preempted in this specific context turns on federal law, *Close*, 909 F.3d at 1209–10, and is therefore a question distinctly reserved for step two of the analysis—determining whether, notwithstanding an individual's state law rights, the government can reach the property, *see* 18 U.S.C. § 3613(a). But the majority conveniently casts aside Idaho's law at step one, thereby ridding it of the burden of explaining precisely how or why state law is preempted in this specific context.

At bottom, the general principles of Idaho community property law provides the answer. Under Idaho law, Mr. Swenson does have rights to the Account, even assuming it consists solely of Mrs. Swenson's Social Security benefits. *See Hoskinson*, 80 P.3d at 1062. The next question is

*English v. Arizona*, 520 U.S. 43, 79 (1997) ("Speculation by a federal court about the meaning of [state law] in the absence of prior state court adjudication" reaching that specific issue "is particularly gratuitous when the state courts stand willing to address questions of state law on certification from a federal court." (alteration adopted) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 510 (1985))).

whether the government may garnish the property—i.e., whether federal law preempts state law or otherwise limits the government's ability to reach the property.

## C.  *Novak*'s context-specific analysis does not control.

The majority also states, albeit briefly, that this reliance on federal law (through preemption) is justified, because the Social Security Act affects the scope of Mr. Swenson's property rights.  *See* Maj. Op. 15 n.6.  But *Novak*, the lone case upon which the majority relies for this proposition, does not support the majority's conclusion.  *See* 476 F.3d 1041.

In *Novak*, the "key question" was whether a participant's contingency "interest in a retirement plan [was] 'property or a right to property' under 18 U.S.C. § 3613(a)."  *Id.* at 1060 (alterations adopted).  In that case, we were trying to determine whether the criminal defendant's contingency interests in an ERISA-covered retirement plan even amounted to "property" in the first instance.  Because the nature and extent of an individual's interests in such a plan are "governed exclusively by federal law," we looked to federal law instead of state law to determine the nature and extent of any existing property rights.  *Id.* at 1061 (citing 29 U.S.C. § 1144(a)).  In other words, in *Novak*, there quite simply was no state law upon which we could rely to inform the nature of the unique "species of property rights that [t]here concern[ed] us."  *Id.*  Federal law controlled whether the defendant in *Novak* had a property interest in the retirement benefits at issue through his contingent interests in an ERISA retirement plan.  *Id.* at 1060–62.

However, *Novak* does not control here.  We expressly noted in *Novak* that our reliance on federal law in delineating the property rights in that case was context specific.  *Id.* at 1061 (relying exclusively on federal law "*in the current*

*context*," while acknowledging that "state law ordinarily informs the delineation of 'property'" (emphasis added)). Our analysis here is different, because the context of this case is different.  For example, unlike the property at issue in *Novak*, there is no question that the property at issue in this case—moneys received solely through Mrs. Swenson's Social Security benefits—is "property" within the meaning of the MVRA; it undoubtedly is.  Additionally, there are no complex, exclusively government-defined contingency interests at stake here.  The only question is whether Mr. Swenson has a right to the moneys sitting in the Account.

Further, also distinct from the ERISA-covered retirement plans at issue in *Novak*, whether an individual has an interest in Social Security benefits is *not* governed exclusively by federal law; the Social Security Act often looks to and relies on state law to determine whether an individual has rights or access to Social Security benefits.[9] *See, e.g.*, *Vernoff v. Astrue*, 568 F.3d 1102, 1104–12 (9th Cir. 2009) (analyzing state law to determine whether an individual qualified for child survivor benefits under the Social Security Act); *Woodward v. Comm'r of Soc. Sec.*, 760 N.E.2d 257 (Mass. 2002) (looking to state law principles to determine whether a wife was eligible for Social Security survivor benefits).  Thus, because Mr. Swenson's interests in the property at issue are not controlled exclusively by

---

[9] The majority claims that the cases cited in support of this assertion are inapposite, because "no party disputes that Mr. and Mrs. Swenson are legally married."  Maj. Op. 14 n.5.  The majority misses the point.  I do not cite these cases for to show factual similarity.  I cite these cases to show that, as a purely legal matter, the majority's reliance on *Novak* is misplaced, because the Social Security Act context is fundamentally different than the ERISA context.  While ERISA completely controls whether someone has rights to ERISA-controlled retirement accounts; the Social Security Act often looks to state law to delineate one's rights to benefits.

federal law like the *Novak* defendant's contingency interests in ERISA-covered retirement plans in *Novak*, the majority errs in bypassing state law in determining Mr. Swenson's rights to Mrs. Swenson's Social Security benefits.[10]

Thus, because (1) our analysis in *Novak* was context specific and (2) unlike in *Novak*, federal law does not exclusively govern the extent to which an individual has rights to the property at issue, *Novak* does not support the assertion that "the [Social Security Act] is relevant to the delineation of property in this case." Maj. Op. 15 n. 6. In this case, Idaho law—not federal law—delineates the rights Mr. Swenson has in the Account.

## III.    The government may garnish the Account.

Because Mr. Swenson has a state-law property interest in the Account, the government has a broad right to garnish the Account. *See Novak*, 476 F.3d at 1063 (stating that "the government's right is to step into the *defendant's* shoes" when executing a garnishment order). Indeed, the majority agrees that none of the statutory exceptions to the MVRA's broad rights of garnishment apply in the present situation. *See* 18 U.S.C. § 3613(a).

---

[10] The majority claims that it does not impermissibly bypass state law "any more than the Idaho court in *Sherry* did." Maj. Op. 15 n.6. But this is flatly untrue. The *Sherry* court understood and acknowledged that Idaho law presumes that all property obtained during marriage is community property. Then, operating from that baseline, it conducted the relevant preemption analysis. All I ask is that the majority conduct the same analysis: first acknowledging what Idaho law requires, *then* analyzing whether federal law preempts Idaho law in this specific context. The majority errs because it does not conduct this analysis; it simply assumes preemption in this case without carrying out the relevant context-specific examination.

Section 207 of the Social Security Act—the provision requiring preemption of Idaho's community property regime in *Sherry*—would ordinarily preempt Idaho's community property law, thereby rendering Idaho law unenforceable and barring the government from garnishing Mrs. Swenson's Social Security benefits. *See Sherry*, 701 P.2d at 270; *see also* Maj. Op. 17 (noting that, were it not for the restitution order, "Mr. Swenson would have no right to Mrs. Swenson's Social Security benefits because the [Social Security Act] preempts application of Idaho law community property principles"). However, in the current context, Congress has expressly removed this conflict. *See* 18 U.S.C. § 3613(a) ("Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined . . . ."); *Novak*, 476 F.3d at 1048 ("[B]y making clear that the 'notwithstanding' clause 'includes' the one federal anti-alienation provision that demands explicit statutory override [42 U.S.C. § 407(a)], Congress manifested that § 3613(a) means what it says—that it reaches '*all* property or rights to property' not excepted including property otherwise covered by federally mandated anti-alienation provisions." (citation omitted)). Thus, unlike in *Sherry*, there is no conflict between the Social Security Act's anti-alienation provision and Idaho community property law.

Idaho's community property regime should therefore be enforced in this case, because: (1) the MVRA does not provide an exception from garnishment for this property, *see* § 3613(a); and (2) unlike in *Sherry*, there is no conflict between state and federal law and is thus no barrier to the government stepping into Mr. Swenson's shoes and garnishing the Account, *see Close*, 909 F.3d at 1209–10.

This reading of the statute may lead to what some may consider inequitable results. Indeed, it certainly is true that this approach would allow the government "to garnish assets that the defendant"—pursuant to federal law—"would otherwise have no right to" in divorce proceedings. Maj. Op. 16. However, the very purpose of the MVRA was to expand the pool of property available to the government's reach beyond what it would be in other contexts.[11] *See Novak*, 476 F.3d at 1046 ("By its use of the '*all* property or rights to property' language, Congress has made quite clear that the totality of defendants' assets will be subject to restitution orders. The Supreme Court emphasized the breadth of the 'all property or rights to property' phrase in the context of tax collection statutes: 'The statutory language all property and rights to property, . . . is broad and reveals on its face that Congress meant to reach *every* interest in property . . . .'" (quoting *Nat'l Bank of Commerce*, 472 U.S. at 719–20 (citations and internal quotation marks omitted)). Furthermore, through the implementation of the MVRA, "Congress has specifically subordinated the goals of economic rehabilitation and equitable distribution of assets to the states' interest in prosecuting criminals." *In re Gruntz*, 202 F.3d 1074, 1086 (9th Cir. 2000) (en banc).

---

[11] The majority claims that this assertion "conflat[es] the MVRA's intent to reach all of a defendant's assets in garnishment proceedings, with a permission for the government to 'expand the pool' of a defendant's property beyond that which the defendant would have a right to [in] any other legal proceeding." Maj. Op. 16 n.7. However, the majority misconstrues my statement. I do not suggest that the MVRA somehow expands the pool of the defendant's property. It does not. However, it does undeniably expand the pool of property *within the government's reach* by sweeping aside federal laws that would otherwise limit that reach. *See* 18 U.S.C. § 3613(a).

I certainly sympathize with the innocent wife's situation and would take no pleasure in allowing the government to garnish her Social Security benefits. To be sure, Mrs. Swenson has not been convicted of any wrongdoing.[12] But, as the author of today's majority opinion once stated, "for better or worse, it has long been true in community property jurisdictions that both spouses assume the risks—and benefits—of the legal system. The case books are replete with examples of seeming injustices to innocent spouses where community property laws are applied." *See United States v. Berger*, 574 F.3d 1202, 1206 (9th Cir. 2009). Idaho's community property regime gives Mr. Swenson a property interest in the Account, regardless of the fact that the account solely consists of Mrs. Swenson's Social Security benefits. Therefore, the government can reach it under the MVRA.

---

[12] The majority makes much of the fact that Mrs. Swenson is not the subject of the criminal proceedings or the garnishment order. *See* Maj. Op. 11 (noting that the MVRA was enacted to "ensure that the *offender* be held accountable" for their actions (alterations adopted) (quoting Novak, 476 F.3d at 1043)); *id.* at 12 (recognizing "Congress's intent to broaden the government's collection powers to reach all of a *defendant's* assets"). However, this consideration is irrelevant. Indeed, as the majority has recognized, *see* Maj. Op. 13, the only relevant questions is not who holds title to the property, but whether the criminal defendant—here Mr. Swenson—has "rights to" the property. *See* § 3613(a). And in this case, because Mr. Swenson has rights to the property at issue through Idaho's community property law, it doesn't matter whether Mrs. Swenson is innocent or guilty as sin; Mrs. Swenson's Account consisting solely of moneys stemming from her Social Security benefits can be garnished by the government.